CATHAY MORTUARY (WAH SANG) INC. Nicholas Daphne, and Virginia Daphne, Plaintiffs,

v.

UNITED PACIFIC INSURANCE COMPANY, Reliance Insurance Company, and Allen Lee, Defendants.

No. C–81–4062 RPA.

United States District Court, N.D. California.

March 13, 1984.

Cliff Palefsky, McGuinn, Hillsman & Palefsky, San Francisco, Cal., for plaintiffs.

Bryan A. Marmesh, St. Clair, Zappettini, McFetridge & Griffin, San Francisco, Cal., for defendants.

## OPINION AND ORDER

AGUILAR, District Judge.

The instant action arises out of the conduct of various parties in a state court trial in 1980. In the state trial, a jury determined that Cathay Mortuary was liable for negligent and intentional acts connected with the removal of a body without authorization. The jury awarded damages to plaintiffs. Pursuant to state law, California Insurance Code § 533, and the insurance contract, the insurance companies only covered the damages assessed for negligent acts of the insureds. Punitive damages and other damages assessed for intentional acts were the responsibility of the insureds.

The insureds believed that the jury verdict was erroneous and susceptible to challenge on a number of grounds. Most importantly, the judge did not give the jury an instruction on how to find that a corporate entity, *viz.* Cathay Mortuary, had committed an intentional act. This failure to instruct brings into question the jury's determination that Cathay Mortuary committed an intentional act and the jury's consequent award of damages based on the intentional act.

Cathay brought these issues to the attention of the insurance companies and requested that the insurance companies pursue post-trial remedies that would produce a more favorable result for the insureds. The insurers refused to pursue any post-trial remedies on behalf of the insureds. The insured, through their own counsel, filed a motion for new trial and it was denied. The insureds did not appeal to the California Court of Appeal.

Unable to achieve any favorable action in the state court proceeding, Cathay Mortuary and Nicholas and Virginia Daphne brought the instant lawsuit against their insurers. Plaintiffs herein charge their insurers with breach of the insurance contract, bad faith breach of the covenant of good faith and fair dealing, breach of fiduciary duty, violation of the insurance code, and negligence. All of plaintiffs' causes of action arise from the insurers' refusal to pursue post-trial remedies in the state courts.

The case is before the Court on plaintiffs' motion for partial summary judgment and defendants' motion for summary judgment or partial summary judgment.

FACTS:

Plaintiff in the instant action is Cathay Mortuary. The principals of Cathay Mortuary, Nicholas Daphne and Virginia Daphne, are also named as plaintiffs in this case. [Hereinafter, all plaintiffs will be referred to as "Cathay" or "Cathay Mortuary"] The defendants are United Pacific Insurance Company and Reliance Insurance Company, both of whom insured Cathay. Allen Lee, an employee of United Pacific is also named as a defendant.

In 1977, Cathay Mortuary was sued in state court by four siblings of Raymond Burke. Mr. Burke died in a small Tenderloin hotel on September 13, 1976, of cirrhosis of the liver. Mr. Burke's brother, Harry Burke, called Cathay Mortuary. Harry spoke to a Cathay employee named Clifford Salter. The substance of the conversation was a key factual issue in the state court trial. The factual dispute was whether

Harry Burke gave Salter authorization to sign Harry's name to a release form. Harry claims he just asked for prices. Salter says Harry gave him authority to sign Harry's name to a release form.

In any event, Salter did sign the release form. Further, Salter told his boss, Nicholas Daphne that Harry Burke had given him authorization to pick up Raymond Burke's body from the County Coroner's office. Based on this representation, Daphne directed that Raymond Burke's body be retrieved from the County Coroner's office.

Raymond Burke's siblings, Ruth Hartnett, Harry Burke, Robert Burke and Catherine Friedreich sued Cathay. After the suit was filed, Cathay contacted their insurers, United Pacific and Reliance Insurance Companies. Cathay tendered their defense to the insurers. The pertinent clause of the insurance contract provided that:

> It is agreed that such insurance as is afforded by this policy also applies to damage resulting from any claim made against the insured arising out of the performance of professional services for others in the named insured's capacity as funeral director and caused by any negligent act, error or omission of the named insured or of any person employed by the named insured or of any other person for whose acts the named insured is legally liable.

The insurers retained the law firm of Russ & Daniels to defend the action. The insurers also reserved their right to assert non-coverage of amounts recovered. Further, the insurers informed the Daphnes that pursuant to the provisions of the insurance contract and state law, any recovery for intentional acts or punitive damages would not be covered by the insurance policy. Because of the reservation of rights and the notice of non-coverage, Cathay retained the firm of Keker & Brockett to protect against their uninsured liability. At the trial in state court, Paul Daniels of Russ & Daniels acted as lead counsel. William Brockett of Keker & Brockett was present at trial and assisted Daniels.

At trial, there was no dispute that Harry Burke called Cathay Mortuary and spoke to Clifford Salter. The record also shows no dispute on the fact that Salter was a non-management level employee. The key dispute was about what transpired in the conversation between Harry Burke and Clifford Salter. Salter maintained that Harry Burke authorized the removal of Raymond Burke's body from the County Coroner's office. Harry Burke says he only asked Salter for a price quote. Notably, whatever really happened in the conversation between Burke and Salter, it was also undisputed that Salter told Nicholas Daphne that he had received authorization from Burke to remove the body, and that based on this representation, Daphne authorized the retrieval of Raymond Burke's body from the County Coroner's office.

After receiving instructions that will be discussed below, the jury returned a verdict for two of Raymond Burke's siblings. The jury awarded Harry Burke $10,000 for Cathay's *negligent* failure to return Raymond's body within a reasonable time. Ruth Hartnett, Raymond Burke's sister, was awarded $5,000 for Cathay's *negligent* failure to return the body, $15,000 for Cathay's *intentional* removal of Raymond's body without authorization, and $30,000 in punitive damages for Cathay's *intentional* removal of Raymond's body without authorization. In other words, in total the jury awarded $15,000 for Cathay's *negligent* act (failure to return the body within a reasonable time) and $45,000 for Cathay's *intentional* act (removal of the body without authorization). After its motion for new trial had been denied, Cathay settled the judgment for a total of $35,000.

By way of its present motion for partial summary judgment, Cathay Mortuary seeks a ruling that the defendant insurance companies breached their duty to Cathay by failing to provide a complete and adequate defense in the state court action. The specific grounds for the failure to defend claim arise from the insurers' conduct after the jury returned its verdict. The insurers instructed trial counsel, Paul Dan-

iels, not to file a motion for new trial. The insurers also directed counsel not to file a notice of appeal, and refused to post an appeal bond. Finally, while Cathay's own motion for new trial was pending, the insurers tendered $15,000 to plaintiffs to cover the jury award for negligent acts.

The gravaman of Cathay's claim against its insurers is that the insurers abandoned Cathay's defense too early. Cathay contends that the jury's verdict was based on erroneous jury instructions and therefore susceptible to a motion for new trial or an appeal. Cathay's specific argument is that the jury's determination that Cathay had committed an intentional act was erroneous because the jury had not been instructed on the prerequisites for finding an intentional corporate act. Cathay maintains that the insurers' refusal to challenge the jury's determination, either by motion for new trial or by appeal, constitutes a breach of the insurers' obligation to defend Cathay.

Cathay suggests that one of the reasons that the insurers did not want to challenge the jury verdict is that the award was quite favorable to the insurers. As the insurers are only required to pay for recovery for negligent acts, the jury verdict in the state case only cost the insurance companies $15,000. In view of the total liability assessed by the jury, and the potential liability in the case, Cathay suggests that the insurers felt that they had received a favorable result and did not want to challenge that outcome. The problem is that the jury verdict left Cathay with an uninsured liability of $45,000 for acts that the jury found to be intentional corporate acts. Cathay maintains that apparent errors in jury instructions made this result possible, and that the insurers had an obligation to pursue post-trial remedies for Cathay, even if that worked to the ultimate detriment of the insurers.

The Court observes that it is very cautious in its approach to this case. The Court is most hesitant to challenge the honest tactical decisions of counsel. The Court is also leery of making judgments about the propriety of a state jury's find-

ings. Under almost all circumstances, such questions are properly addressed to the state appellate courts. However, given Cathay's charges that the insurers failed to perform their duty to defend, this Court must examine the propriety of both the state jury's finding and the insurers' decisions not to pursue post-verdict remedies on Cathay's behalf.

 In the context of a tort analysis, the law is quite clear on what constitutes an intentional corporate act. In order to find that a corporation has committed an intentional act, a court or jury must find that the corporation committed, directed or ratified the intentional act. *Hale v. Farmers Insurance Exchange*, 42 Cal.App.3d 681, 117 Cal.Rptr. 146 (1974); Restatement Second of Torts § 909. Without evidence or a jury instruction on this point, a finding of an intentional corporate act is susceptible to serious challenge. In turn, corporate liability for punitive damages based on the intentional acts of a non-managerial employee similarly depends on a finding of ratification or direction by the corporation or by a managerial employee. *See Hale v. Farmers Insurance Exchange.*

In the state case, there was no question that Clifford Salter, Cathay's employee, committed an intentional act. The fact that Salter was a non-managerial employee of Cathay was also not disputed. Applying the legal principles with respect to intentional corporate acts, this means that in order for the state jury to determine that Cathay Mortuary had committed an intentional act, the jury would have had to find that Cathay had either directed or ratified Salter's actions. *Hale v. Farmers Insurance Exchange*, 42 Cal.App.3d at 690–692, 117 Cal.Rptr. 146.

The Court observes that there may have been a factual dispute about ratification. Whatever the state of the evidence, the jury was never instructed on the central issue of ratification in connection with the claim for punitive damages.

The state judge did instruct the jury that Cathay Mortuary is a corporation and that a corporation can act only through its em-

654

ployees or officers. The court also instructed that the act or omission of an employee within the scope of his or her employment is the act or omission of the corporation. *See* BAJI 13.30. Further, the court instructed the jury that Clifford Salter was an employee of Cathay Mortuary and that consequently any act or omission committed by Salter within the scope of his employment was an act or omission of Cathay Mortuary. *See* BAJI 13.04. The jury was also given the standard jury instruction on punitive damages for intentional torts.

The state judge never instructed the jury that a corporation can only commit an intentional act, an act for which punitive damages can be assessed, if the corporation directs or ratifies that act. As a consequence of the judge's failure to instruct on ratification, the jury was able to find that Cathay Mortuary was liable for intentional acts and in turn punitive damages without finding that Cathay Mortuary had ratified Clifford Salter's act. Accordingly, the jury assessed damages against Cathay for an intentional act, and punitive damages based on that intentional act, apparently without making the required determination that the corporation had ratified the act of a non-managerial employee.

Such a jury verdict presents a legal problem, at the very least. The verdict may have been susceptible to reversal. However, for purposes of Cathay Mortuary's claims against its insurers, the Court does not need to reach the ultimate question of the propriety of the jury's finding. It is enough for the Court to observe that the jury's verdict raises extremely serious questions of law.

Given the questionableness of the jury's determination, one would expect that the losing parties (the insurers and Cathay Mortuary) would pursue post-trial remedies. First among such remedies is the motion for new trial. Under California law, a motion for new trial must be noticed either 180 days after the entry of judgment or 15 days after notice of the entry of judgment. Cal.Civ.Pro.Code § 659.

The record shows that on December 11, 1980, William A. Brockett, counsel for Cathay Mortuary in the state court trial, wrote to Paul Daniels asking that Daniels make a motion for new trial. Brockett also requested, on behalf of his clients, that Daniels make a motion to remit the amount of damages and to vacate the original judgment and substitute a defense judgment. Brockett's letter advanced a number of possible grounds for the post-trial motions. The most significant among these grounds related to the judge's failure to give the jury an instruction on ratification. Brockett wrote to Daniels:

The jury should have been given ratification instructions. Although there is no doubt that Clifford Salter was approved in his actions, the jury did not have an opportunity to pass upon whether or not the Daphnes had been adequately informed of any alleged misbehavior on his part. Management can only be held to *ratify* if they have acted with the information which could be secured by a diligent person. The issue of ratification should have been instructed, to permit argument upon this point in final argument.

Brockett's exhortations notwithstanding, counsel for the insurance companies did not notice any of the requested post-trial motions. On December 22, 1980, Brockett wrote directly to Mr. Allen Lee, of United Pacific/Reliance Insurance Company. Brockett told Lee that "... I insist that the insurance company has the duty to do one of two things: 1) Settle this case with plaintiffs now by paying the judgment in full, or such lesser amount as may be negotiated, or, 2) continue to assume the duty of defense of this case, making all possible post-trial motions, and filing and prosecuting an appeal." Brockett continued to emphasize his limited role in the litigation, and that his involvement in no way waived his clients' rights to rely on the insurance company to defend the case.

Still, the insurance companies instructed their counsel not to file any of the post-trial motions requested by Brockett on behalf of

Cathay Mortuary and the Daphnes. Brockett made the motion for new trial himself. While Brockett's motion for new trial was pending in the state court, the insurers tendered $15,000 to plaintiffs to satisfy the portion of the judgment for which the insurers were responsible (the award for negligence). Cathay claims that the insurers' undercut Cathay's pending motion for new trial and therefore acted in bad faith.

Demonstrating further disregard for the requests of their insureds, the insurance companies also instructed their attorneys not to file a notice of appeal. Moreover, the insurers refused to post an appeal bond.

Based on the insurance companies' conduct with respect to post-trial proceedings, Cathay filed the instant action alleging that the insurance companies breached their obligations to Cathay. Specifically, Cathay charges that the insurers failed to properly discharge their duty to defend their insureds.

The duty to defend is principally a contractual obligation. *See* Couch on Insurance 2d (Rev.ed) § 51.38. Accordingly, the first place that the Court looks is to the contract between Cathay and its insurers. The insurers' duties with respect to the conduct of a lawsuit against their insureds are set forth in the "Morticians' Malpractice Liability Supplement," which is part of the "Comprehensive Liability Policy" between the parties. Under the heading "Defense, Settlement, Supplementary Payments," the policy provides as follows:

II. As respects such insurance as is afforded by the other terms of this supplement under coverages A, B or C the company shall:

(a) defend in his name and behalf any suit against the Insured alleging such injury, destruction, mental anguish, bodily injury, sickness, disease or death and seeking damages on account thereof, even if such suit is groundless, false or fraudulent;

This provision establishes, without question, that the insurers had a contractual obligation to defend Cathay in the state court action. (The insurers' duty to defend included the Daphnes as well under the definition of "Insured" contained in the policy.)

The duration and extent of the insurers' obligation to defend is not clear from the insurance policy. The policy provides that the insurers "shall pay ... all premiums on appeal bonds in any such defended suit, but without any obligation to apply for or furnish such bonds ..." The effect of this provision is ambiguous. It does not appear to say that the insurers are required to pursue an appeal but it implies the possibility of an appeal. The insurers are required to furnish the *premium* for an appeal bond. Presumably, this situation might arise if either the insurers *or* the insureds wanted to pursue an appeal. In any event, the language in the policy is too uncertain for the Court to find that there is any explicit contractual duty to pursue post-trial remedies. The court does conclude, however, that this language tends to favor a finding that an appeal would come within the purview of the afforded coverage.

Consequently, while the insurance policy establishes the insurers' essential duty to defend the insureds, the Court must look to other sources to determine the duration and extent of this duty. The Court finds that under the facts in the instant case, the duty to pursue post-trial remedies was part and parcel of the general duty to defend.

As discussed above, the insurance policy is ambiguous with respect to the question of the duty to appeal. The general rule is that where an insurance contract is unclear as to the duty to defend, the contract shall be construed against the insurer. *Arenson v. National Automobile & Casualty Insurance Co.*, 48 Cal.2d 528, 310 P.2d 961 (1957); *see also, Blackfield v. Underwriters at Lloyd's, London,* 245 Cal.App.2d 271, 53 Cal.Rptr. 838 (1966); *Walters v. American Insurance Co.,* 185 Cal.App.2d 776, 8 Cal.Rptr. 665 (1960). By this token, the duty to appeal is not precluded by contract unless the contract very specifically exempts the insurer from the duty to

656

appeal. *Gary v. Zurich Insurance Co.*, 65 Cal.2d 263, 267, 54 Cal.Rptr. 104, 419 P.2d 168 (1966); *Steven v. Fidelity & Casualty Co.*, 58 Cal.2d 862, 878, 27 Cal.Rptr. 172, 377 P.2d 284 (1962). The insurance contract at issue here plainly does not contain an explicit clause excluding post-trial remedies from the duty to defend.

The next step in the Court's analysis is to determine what the law requires of an insurer with respect to pursuing post-trial remedies on behalf of an insured. The Court has made an exhaustive search for decisions on the question of whether the general duty to defend encompasses a duty to pursue post-trial remedies. The Court has uncovered a small but distinct body of case law on this issue.[1] *See*, Couch on Insurance 2d (rev. ed.) § 51.38; 69 A.L. R.2d 690, and cases collected therein. While the Court has found cases of some value from various jurisdictions across the country, the Court has not found, and the parties have not cited any California cases directly on point. Nevertheless, the Court believes that a related line of California authority may be brought to bear on the issue presented in this case. The Court's discussion will proceed from a review of decisions on the duty to appeal to a consideration of the related California decisions.

As Couch introduces the topic, "[t]here is a diversity of opinion as to whether an insurer is obligated to prosecute an appeal from an adverse judgment against its insured." Couch on Insurance 2d (Rev. ed.) § 51.38. There are, as Couch suggests, essentially two distinct lines of authority with respect to this issue. However, close examination of the cases demonstrates that the lines of authority are not as disparate as they might first appear.

One group of decisions indicates that insurers have a substantial duty to pursue appeals on behalf of their insureds. The

New York courts have a strong line of decisions to this effect. In *Kaste v. Hartford Accident and Indemnity Co.*, a New York court ruled that a "covenant to defend embraces the duty to prosecute an appeal from a judgment against an insured 'where there are reasonable grounds for appeal.'" 5 A.D.2d 203, 170 N.Y.S.2d 614, 616 (1958). Justice Jerome Frank concurred in this decision and went even farther toward requiring an insurer to pursue an appeal on behalf of its insured. "Where the insurance company, as here, assumes a single obligation to defend its assured, I see no reason to draw a distinction between defense prior to or on appeal, in the absence of language in the contract expressing such an intention. Nor can I find justification for implying conditions as to prosecution of an appeal not expressed within the ambit of the policy." *Id.* 170 N.Y.S.2d at 618. In *Fidelity General Insurance Co. v. Aetna Insurance Co.*, 27 A.D.2d 932, 278 N.Y.S.2d 787 (1967), the New York court affirmed the continuing validity of the *Kaste* decision.

Similarly, the Michigan Court of Appeals ruled that if the insurance policy contains a broad duty to defend clause, then the insurer is obliged to appeal on behalf of its insured. *Palmer v. Pacific Indemnity Co.*, 74 Mich.App. 259, 254 N.W.2d 52 (1977). Under such a clause, the court said, "[t]he insured is entitled to be defended by the insurer at both the trial level as well as the appellate level unless otherwise specifically set forth in the contract of insurance." *Id.* 254 N.W.2d at 55.

The Louisiana Court of Appeals also found that an insurer has a legal responsibility to pursue an appeal on behalf of its insured. *Reichert v. Continental Insurance Co.*, La.App. 290 So.2d 730 (1974). In language particularly applicable to the instant case, the Louisiana court said "[w]e

1. The case law discussed below all relates to an insurer's duty to appeal on behalf of an insured. The Court has not found any cases on the question of the insurer's duty to pursue post-trial remedies such as a motion for judgment notwithstanding the verdict or a motion for new trial. However, the Court finds that the reason-ing of the cases on the duty to appeal applies with equal force to the duty to pursue other post-trial remedies. For this reason, the Court will treat the duty to appeal and the duty to pursue post-trial remedies as synonymous obligations.

are of the view that where, after trial on the merits, reputable counsel gives cogent reasons for an appeal on behalf of the insureds, and urgently recommends that, in his professional opinion, appeal is in order, an insurer must appeal on behalf of its insured." *Id.* 290 So.2d at 734. The Louisiana court recently affirmed its belief in the duty to appeal in the case of *Petrol Industries v. Gearhart-Owen Industries,* La.App. 424 So.2d 1059 (1982).

The second group of decisions is less strong about the insurers' duty to pursue post-trial remedies. However, from the outset it is important to point out that in large part the decisions in this second group of cases do not say that there is not an obligation to appeal, but rather that "an agreement in an insurance contract 'to defend' does not necessarily raise an obligation to prosecute an appeal." Couch on Insurance 2d § 51.38. Careful reading of these decisions reveals that while they emphasize the interests of the insurer more than the previously discussed line of cases, they do not reach a terribly different result.

For example, in *Chrestman v. United States Fidelity and Guarantee Co.,* 511 F.2d 129 (5th Cir.1975), the court held that there must be at least reasonable grounds for appeal before an insurer is obliged to pursue such an appeal on behalf of the insured. The *Chrestman* decision is appropriately weak because there was no relevant authority in the state from which the case arose (Mississippi).

Similarly, in *Guarantee Abstract and Title Co. v. Interstate Fire and Casualty Co.,* 228 Kan. 532, 618 P.2d 1195 (1980), the Kansas Supreme Court explained that "[i]t is generally accepted that this duty to defend does not necessarily obligate the insurer to prosecute an appeal." *Id.* 618 P.2d at 1199. After pointing out that a minority of jurisdictions do impose a duty to appeal, the Kansas court concluded that "[w]e think the majority view logical and just although ... we do not look with favor upon an insurance company that abandons its insured and refuses to appeal, relying

on its immunity from a claim for punitive damages." *Id.* 618 P.2d at 1200. Notably, the Kansas court awarded some relief against an insurer that refused to appeal. It ruled, however, that such an insurer is not liable for punitive damages. Most importantly, while the Kansas court perceived two very different lines of authority on this point, neither its description of the differences nor review of the cases cited show much difference between the supposedly majority and minority views.

Two older federal court of appeals decisions are much stricter with respect to the duty to appeal. In *Hawkeye-Security Insurance Co. v. Indemnity Insurance Co.,* 260 F.2d 361 (10th Cir.1958), the court ruled that an insurance company can only be held liable for failing to appeal in instances of fraud or bad faith. The Seventh Circuit Court of Appeals ruled that if an insurance company paid into the court the full amount of its policy limits, plus all costs and interest, then its duty to further defend the insureds ceased under the terms of the contract. *General Casualty Company of Wisconsin v. Whipple,* 328 F.2d 353 (7th Cir.1964).

While these federal decisions come down against a duty to appeal, the Court finds that these cases are considerably out of step with the general policy in California with respect to the relationship between insurers and their insureds.

Because the question of an insurers' duty to appeal on behalf of its insured is a matter of state law, this Court is hesitant to make any broad statements of law in this case. Fortunately, for purposes of this case, the Court need not make any choice with respect to which line of decisions is "better." From the Court's reading of all the decisions, the Court finds that there is a general consensus that an insurer is obliged to pursue an appeal on behalf of its insured where there are reasonable grounds for appeal. In the case at bar, the insurer plainly had very strong grounds for appeal. Thus, without specifically adopting either line of authority, the Court finds, without any hesitation, that the insurers

had a legal obligation, as part of their duty to defend, to pursue an appeal on behalf of Cathay Mortuary. As noted earlier, the Court considers the duty to appeal as synonymous with the duty to pursue other available post-trial remedies. Thus, in finding that the insurers had a duty to appeal, the Court simultaneously concludes that the insurers had the obligation to pursue other post-trial remedies on behalf of Cathay Mortuary.

The Court is confident that the result expressed above is consistent with California law on insurers' duties to their insureds. Once again, the Court's analysis begins from the premise that the insurance contract between Cathay and its insurers created a duty to defend. The insurers do not contest this point. The question is whether a duty to pursue post-trial remedies is encompassed within this duty to defend.

As the courts have repeatedly recognized, in many cases, an insurance company's interest may be at least partially at odds with the interests of its insured. The California courts have developed a considerable body of case law with respect to these potential conflicts of interest. As a general proposition, the California courts have resolved these conflicts of interest in favor of the insured.

At the most basic level, the courts have been faced with the question of whether the insurers' duty to defend includes cases in which the insured is charged with an intentional (*i.e.* uninsured) act. In *Gray v. Zurich,* the California Supreme Court held that an insurer must defend an action if there is any theory of liability that would produce an award that is covered by the insurance policy. 65 Cal.2d 263, 54 Cal. Rptr. 104, 419 P.2d 168 (1966). *Mullen v. Glens Falls Insurance Company,* 73 Cal. App.3d 163, 140 Cal.Rptr. 605 (1977), is to the same effect. *See also Previews, Inc. v. California Union Insurance Co.,* 640 F.2d 1026 (9th Cir.1981). As noted earlier, contracts that are ambiguous with respect to an insurer's duty to defend shall be construed in favor of the insured. *See e.g.,*

*Gray v. Zurich,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168; *Arenson v. National Automobile & Casualty Co.,* 48 Cal.2d 528, 310 P.2d 961.

Also illustrative of the policy of the California court with respect to the relationship between insurers and their insured is the line of authority on an insurer's duty to settle. In *Communale v. Traders and General Insurance Co.,* 50 Cal.2d 654, 328 P.2d 198 (1958), the California Supreme Court held that "[w]hen there is a great risk of recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement that can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim. Its unwarranted refusal to do so constitutes a breach of the covenant of good faith and fair dealing." *Id.* 50 Cal.2d at 659, 328 P.2d 198. The California court reaffirmed the *Communale* decision in *Johansen v. California State Automobile Association Inter-Insurance Bureau,* 15 Cal.3d 9, 123 Cal.Rptr. 288, 538 P.2d 744 (1975).

Similarly, assuming probable liability, there is a tension between the insurer's desire for a finding of an intentional (uninsured) act and the insured's interest in a finding of a negligent (insured) act. The tension is heightened by the fact that the insurer generally has control over the litigation. To deal with this conflict, the California courts have established rules and policies that protect the interest of the insured. For instance, as the Ninth Circuit recently stated, "California law provides that in a conflict of interest situation, the insurer's desire to control exclusively the defense must yield to its obligation to defend the policy holder. Accordingly, the insurer's obligation to defend extends to paying the reasonable value of the legal services and the costs provided by independent counsel selected by the insured." *Previews, Inc. v. California Union Insurance Co.,* 640 F.2d at 1028 (citations omitted); *see also Tomerlin v. Canadian Indemnity Co.,* 61 Cal.2d 638, 39 Cal.Rptr. 731, 394 P.2d 571 (1964).

On the basis of the examples set forth above, and many others that the court need not cite, the Court believes it is fair to characterize California law as holding that in a question of conflict of interest between an insurer and its insured, the interests of the insured should prevail. Accordingly, although the Court recognizes that there are no California decisions directly addressing the issue of an insurer's duty to pursue post-trial remedies, the Court is confident that California law supports the imposition of such a duty in this case.

■ The nature of the conflict in this case is not markedly different from the conflict in many other cases. Put bluntly, the state jury's verdict was very favorable to the insurer. The insurer was found liable for only $15,000 while the insured was saddled with liability of $45,000. It is easy to see that the insurer did not have an economic interest in pursuing post-trial remedies. Nevertheless, the law imposes a duty on the insurer to serve the interests of the insured.

On the facts of this case, there can be little question that the interests of the insured dictated that post-trial remedies should be pursued. The jury verdict imposed a $45,000 liability on the insureds. However, the legal basis of this liability, particularly the portion awarded as punitive damages, is in serious question because it was based on the jury finding an intentional corporate act without the jury having the benefit of an instruction on how to find an intentional corporate act.

In light of the substantial liability based on a questionable jury finding, the Court has no doubt that pursuit of post-trial remedies was in the best interests of the insured. Further, the court finds that it was the duty of the insurers to pursue those post-trial remedies on behalf of the insureds.

The insurers argue that the fact that the insured's attorney, William Brockett, made a motion for new trial absolves the insurers of any wrongdoing or consequent liability. This contention is without merit. In the first place, the insured's counsel only made a motion for new trial. He did not file an appeal, a post-trial remedy that this Court has found the insurer was required to pursue. Second, the actions of the insured's attorney are irrelevant to the insurers' duty to act. In many cases, an insured may not be able to protect its own interests because it cannot afford independent representation. The question in the instant case is the insurance companies' responsibility to pursue post-trial remedies. The fact that someone took on their duty to defend does not exonerate the insurers from their obligation to defend. Thus, the Court finds that Cathay's motion for new trial in no way militates against the Court's determination that the insurers breached their duty to defend by failing to pursue post-trial remedies.

Having determined that the defendant insurance companies breached their duty to defend Cathay Mortuary, the only issue remaining before the Court is the extent of the damages to which Cathay is entitled. As noted earlier, the jury's award left Cathay with an insured liability of $45,000. Of that amount, $15,000 were compensatory damages for Cathay's intentional wrongdoing. The other $30,000 were punitive damages for the acts of intentional wrongdoing. After their motion for new trial was denied, Cathay settled their liability with the relatives of Raymond Burke for the amount of $35,000. As damages for the insurers' failure to fulfill their duty to defend, Cathay seeks recompense of the $35,000 paid in settlement plus the attorneys' fees and costs incurred in connection with Cathay's post-trial representation by William Brockett.

■ California law is quite clear on the damages Cathay may receive from the insurers. "An insurer's wrongful refusal to defend will automatically subject it to liability for both the costs of defense and any adverse judgment the insured suffers, even when the judgment was rendered on a theory not within the policy coverage." *Kapelus v. United Title Guaranty Co.*, 15 Cal. App.3d 648, 93 Cal.Rptr. 278 (1971); *see also, Gray v. Zurich*, 65 Cal.2d 263, 280, 54

Cal.Rptr. 104, 419 P.2d 168 (1966); *Arenson v. National Automobile & Casualty Insurance Co.*, 45 Cal.2d 81, 84, 286 P.2d 816 (1957); Cal.Civ.Code § 2778. Further, an insurer who wrongfully refuses to defend is also liable for the amount of any reasonable settlement that the insured makes in good faith. *Columbia Southern Chemical Corporation v. Manufacturers & Wholesalers Indemnity Exchange*, 190 Cal.App.2d 194, 11 Cal.Rptr. 762 (1961), disapproved on other grounds, 57 Cal.2d 27, 38, 17 Cal.Rptr. 12, 366 P.2d 455; *Ritchie v. Anchor Casualty Co.*, 135 Cal.App.2d 245, 286 P.2d 1000 (1955). The Court finds that the settlement achieved by Cathay was reasonable and was made in good faith.

Thus, the Court concludes that the defendant insurers are liable to Cathay for the entire $35,000 that Cathay paid in settlement of the judgment in the state court action. In addition, the insurers are liable for the reasonable costs and attorneys' fees Cathay incurred in conducting its own post-trial defense. The insurers are not liable for Cathay's costs and attorneys' fees in prosecuting this separate federal court action. *Lowell v. Maryland Casualty Co.*, 65 Cal.2d 298, 54 Cal.Rptr. 116, 419 P.2d 180 (1966); *Carroll v. Hanover Insurance Co.*, 266 Cal.App.2d 47, 71 Cal.Rptr. 868 (1968).

For the reasons expressed above, and for good cause appearing, the Court grants plaintiffs' motion for partial summary judgment and denies defendants' motion for summary judgment.

IT IS SO ORDERED.