[No. G005798. Fourth Dist., Div. Three. May 31, 1990.]

ARTHUR T. JENKINS, Plaintiff and Respondent, v. INSURANCE COMPANY OF NORTH AMERICA, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, parts II, IV, V, VI, VII, VIII and IX are not published, as they do not meet the standards for publication.

COUNSEL

R. Richard Farnell, Edward J. Horowitz and Margaret Kathryn Maas for Plaintiff and Respondent.

Wise, Wiezorek, Timmons & Wise, Michael J. Pearce, Horvitz & Levy, Ellis J. Horvitz and Daniel J. Gonzalez for Defendant and Appellant.

OPINION

**MOORE, J.**—Insurance Company of North America (INA) appeals a judgment of $500,000 compensatory damages and $2.5 million punitive damages in favor of Arthur T. Jenkins after a four-month jury trial. INA contends: (1) the evidence fails to support the judgment; (2) the trial court erroneously instructed the jury on its duty to appeal, on its duties concerning other insurance companies, and on its interpleader action and request for attorney's fees and costs; (3) the trial court erred by submitting to the jury the issue of bad faith failure to settle; (4) the trial court erred by permitting expert testimony on Jenkins's claim INA breached its legal duties and acted in bad faith; and, (5) the award of compensatory and punitive damages was invalid.

In the published portion of this opinion, we consider INA's claim of error in the court's instruction to the jury on the duty to appeal. We affirm the judgment in its entirety.

I

FACTS

Jenkins commenced construction of six homes in Laguna Beach's Bluebird Canyon in February 1974. To provide funding for the purchase of the property, he formed a limited partnership known as Bluebird Glen, Ltd. The homes were each sold for approximately $75,000 while under construction, and were ultimately occupied in spring 1975.

When construction began Jenkins procured a $300,000 liability policy from Mission which was effective from February 7, 1974, to February 7, 1975. He also purchased an excess policy from St. Paul Fire & Marine Insurance Company (St. Paul), which provided $1 million in excess coverage from September 27, 1974, to February 7, 1975, an additional $1 million in excess coverage for the period from February 7, 1975, to February 7,

1976, and a further $1 million in excess coverage for the period from February 7, 1976, to February 7, 1977.

After the expiration of the first Mission policy, Jenkins purchased a second $300,000 policy which was in effect until February 7, 1976. Upon expiration of that policy, he purchased a $300,000 policy from American States, which provided coverage from February 7, 1976, to February 7, 1977. At that time, Jenkins purchased his first $300,000 INA policy covering the period from February 7, 1977, to February 7, 1978. In February 1978, Jenkins purchased his second $300,000 INA policy covering the period from February 7, 1978, to February 7, 1979.

Subsidence problems, resulting in cracking of retaining walls, cracking and sinking of patios, and other structural damage began shortly after the homeowners moved in. In fall and winter 1977-1978, the main retaining wall failed, causing substantial damage to five of the six homes. In June 1978, Jenkins was sued by several homeowners in an action entitled L. Jeffrey Brown, et al. v. Jenkins, et al. (Super.Ct. Orange County, No. 29-31-50). Thereafter, the remaining affected homeowner, Foell, initiated a separate lawsuit.

Jenkins requested a defense by Mission. He was subsequently advised by Mission that INA was at risk for the claims, because the first manifestation of damage occurred in 1977 to the Foell property, and in February 1978 to the Brown plaintiffs' property, periods which were covered by the INA policies.

Accordingly, Jenkins, through his personal attorney, provided notice to INA and made a written demand for coverage on December 11, 1978. By correspondence dated January 17, 1979, S.D. Smith, the attorney hired by Mission to represent Jenkins, advised INA the homes sustained damage in November 1977 and January/February 1978, and demanded INA undertake Jenkins's defense. He also advised INA "the potential exposure is quite substantial" and emphasized the necessity for prompt discovery.

Jenkins's personal attorney and Smith sent follow-up demands to INA, and Smith sent photographs of the homes noting that they "do not accurately depict the enormity of the condition as it now exists," and that "time is of the essence" and "any delay . . . will merely further aggravate the potential exposure and prejudice the rights of Mr. Jenkins."

INA refused to defend, despite further correspondence from Smith and Mission referring to the applicability of both INA policies.

In late February 1979, an INA agent finally discussed the claims with Jenkins by telephone. Jenkins advised INA of the damage which had occurred in 1975. That telephone call was Jenkins's sole contact from INA.

On March 21, 1979, Robert Richards, INA's supervisor/unit manager, sent correspondence to Mission, Smith, and Jenkins. In the letters to Mission and Smith, he designated the date of occurrence as "continuous," and made reference to both INA policies. However, the letter to Jenkins referred to an occurrence date of "2/15/78"—one week into INA's second policy—and, unlike the letters to Mission and its counsel, advised Jenkins only one policy, with liability limits of $300,000, applied.

At trial, Richards admitted he had been aware of the Foell damage claim for November 1977 and the Brown damage claim in February 1978—and thus the applicability of both INA policies.

On April 30, 1979, INA sent Jenkins a reservation of rights letter. The letter referred to both the Foell and the Brown litigation, and two separate file numbers, but continued to represent that "the combined limit of liability . . . is $300,000 per occurrence, with aggregate limit in said amount." At trial, Richards testified: "Q. And so when you wrote that reservation of rights letter, sir, you knew, did you not, there was damage alleged in the first policy period November of 1977 as well as damage alleged in the second policy period, 1978, didn't you? You knew that?

"A. Yes, we knew that." At no time did INA advise Jenkins of the applicability of both of his policies.

An INA memo prepared prior to a mandatory settlement conference on October 9, 1981, concluded Jenkins's exposure "could total 1.7 million," and observed that the Foell damage occurred during the first policy period, which, if proven, "would bring in our $300,000 aggregate for that policy period and in effect, give us a $600,000 exposure." Nevertheless, INA offered only $300,000 at the settlement conference, "to maintain a good faith position." Thereafter, Bluebird Glen Ltd.'s attorney detected the applicability of both policies, and, on October 22, 1981, demanded INA promptly tender both policies. INA complied.

By interoffice memo dated March 14, 1979, INA's western regional manager had advised that "all insurance carriers involved between the date the first home was sold to the date of filing of the Complaint should be involved in the defense." INA failed to advise Mission, St. Paul or American States of their potential exposure, as urged by its own western regional manager. It also refused to permit St. Paul to view the file, stating in a letter dated May

21, 1979, "[w]e have $300,000 . . . . [¶] [T]he excess policy that you have in effect does not appear to come into play."

Prior to trial, INA settled the Foell case against Jenkins for $225,000. After trial of the Brown action began, certain homeowners contacted INA and suggested a structured settlement be negotiated, involving Mission and St. Paul, in light of the 1975 damage. INA did not respond.

A jury rendered an aggregate judgment of $716,000 against Jenkins. Thereafter, the court awarded another party $45,000 against Jenkins on a cross-complaint for indemnity. In March 1982, the court entered judgment against Jenkins in the total sum of $761,000. The plaintiffs in the Brown action then contacted Mission to procure additional funds. After contacting INA, Mission responded to the Brown plaintiffs, noting INA had previously represented it had offered its "policy limits of $300,000," and that at trial, "all of the evidence presented and considered was based upon a loss originating and discovered during 1978."

Following entry of judgment against Jenkins, INA filed an interpleader complaint and deposited $382,589.14 with the court, consisting of the $375,000 remaining policy limits plus interest.

Jenkins testified that during trial the attorney INA retained to represent him stated several of the rulings made by the trial court provided grounds for appeal. However, after the verdict was returned INA declined to appeal because of the cost of obtaining a trial transcript. Jenkins retained his own counsel to defend the interpleader action, and to appeal the indemnity judgment, which was subsequently reversed by this court in an unpublished opinion. In the interpleader action, INA refused to waive its request for attorney's fees and costs to be paid from the sum deposited into court.

II*

MISREPRESENTATION OF POLICY LIMITS

. . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1481.

## III

### INA's Claim of Error in the Instruction on its Duty to Appeal

INA challenges the jury instructions on its duties, including its duty to appeal either or both of the judgments entered against Jenkins in the homeowners' lawsuit.

■ The trial court must instruct the jury on the law applicable to the facts developed by the evidence and every reasonable theory that evidence supports. (*Herbert* v. *Lankershim* (1937) 9 Cal.2d 409, 482 [71 P.2d 220]; *Morehouse* v. *Taubman* (1970) 5 Cal.App.3d 548, 560 [85 Cal.Rptr. 308].) Moreover, if there is any substantial evidence on an issue that is properly urged by a party, it is error for the court to refuse to instruct on it. (*Phillips* v. *G. L. Truman Excavation* (1961) 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33].) ■ Jury instructions are not to be considered in a vacuum, but in their entirety, and in accordance with the evidence presented at trial. (*United Pacific Co.* v. *Southern Cal. Edison Co.* (1985) 163 Cal.App.3d 700, 712 [209 Cal.Rptr. 819].)

Here, INA contends the trial court erred by instructing the jury as follows: "Plaintiff, the insured, claims that Defendant breached its duties of good faith and fair dealing by knowingly failing to protect the interests of the insured by refusing to appeal the judgments against Plaintiff. [¶] In order to prove this breach, Plaintiff has the burden of proving by a preponderance of the evidence the following four things: [¶] 1. That Plaintiff was a defendant in an action brought against him. [¶] 2. That Plaintiff had insurance policies with Defendant that actually or potentially covered the claims of Plaintiff. [¶] 3. That Defendant assumed the Plaintiff's defense of the actions brought against him. [¶] 4. That Defendant refused to appeal either of the judgments entered on the actions brought against Plaintiff, knowing there were reasonable grounds for appeal."

However, the jury was further instructed, at INA's request, that an insurer's refusal to defend or prosecute an appeal, without more, was not bad faith: "INA's good faith belief that there is no coverage is proper cause for denying the claim by Jenkins for policy benefits, provided INA's interpretation of its contract is not unreasonable. Also, INA's good faith belief that there is no duty to defend Jenkins or prosecute an appeal after the exhaustion of its policy limits is a proper cause for refusing to pay such defense or appeal costs, provided that INA's interpretation of its contract is not unreasonable."

Preliminarily, INA claims the court previously granted a partial summary judgment, finding there was no duty to appeal once INA exhausted the policy limits. INA is not candid with this court.

On June 14, 1984, INA moved for summary judgment, or summary adjudication of issues, as to Jenkins's first amended complaint for declaratory relief and bad faith. On the declaratory relief cause of action only, the court found INA ultimately paid its full policy limits and provided an adequate defense, and granted summary judgment in favor of INA. However, as to the cause of action for bad faith, the court denied summary judgment, noting that several issues, including the question of whether INA's "abandonment" of Jenkins following judgment constituted "bad faith," remained in dispute.

■ An insurer's duty to defend exists independently of and is much broader than the duty to indemnify. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573-575 [108 Cal.Rptr. 480, 510 P.2d 1032]; *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 605 [222 Cal.Rptr. 276].) It is a duty which continues until a judgment has been entered and has become final. (*Tibbs* v. *Great American Ins. Co.* (9th Cir. 1985) 755 F.2d 1370, 1375; *Oil Base, Inc.* v. *Continental Cas. Co.* (1969) 271 Cal.App.2d 378, 389 [76 Cal.Rptr. 594].) At trial, Richards admitted INA was aware an insurer cannot legally pay the amount of its limits and thereafter abandon defense of its insured. ■ "The insurer's obligation to defend is not dependent on the facts contained in the complaint alone; the insurer must furnish a defense when it learns the facts from *any* source that creates the potential for liability under its policy. [Citations.] Indeed, the duty to defend is so broad that as long as the complaint contains language creating the potential of liability under an insurance policy, the insurer must defend an action against its insured even though it has independent knowledge of facts not in the pleadings that establish that the claim is *not* covered." (*CNA Casualty of California* v. *Seaboard Surety Co., supra,* 176 Cal.App.3d at p. 606, original italics.)

■ We conclude this duty to defend may include the duty to appeal where reasonable grounds for an appeal exist. (*Cathay Mortuary (Wah Sang)* v. *United Pacific Ins.* (N.D.Cal. 1984) 582 F.Supp. 650, 655.) The court here so instructed the jury.

■ INA argues its policy permitted it to refuse to appeal any portion of the judgments, despite advice from its counsel to the contrary, and to interplead the balance of its policy proceeds into court, and relies upon *Johnson* v. *Continental Ins. Companies* (1988) 202 Cal.App.3d 477 [248 Cal.Rptr. 412], for the proposition that there is no duty to appeal once the

policy limits are exhausted. However, *Johnson* is distinguishable. There, the insurer paid the policy limits within two weeks of the insured's demand. (*Id.* at p. 479.) Some six months after payment, the insured filed a products liability action, and certain defendants initiated cross-actions against her. The court, recognizing that in other circumstances the insurer's duty to defend would continue, held the insurer had no further duty: "Continental's actions in paying out its policy liability limits can hardly be viewed as an artificial exhaustion of policy limits in order to avoid excess liability payments." (*Id.* at p. 485.)

Unlike *Johnson, supra*, 202 Cal.App.3d 479, INA never paid the policy limits, choosing instead to interplead the remaining policy limits some four years after the insured's demand, and, as phrased by the trial court, leaving its insured to "dangle on his own for whatever amount the excess amount of the judgment may be."

As to the indemnity judgment against Jenkins, INA's own counsel believed the ruling to be in error and subject to appeal. INA's refusal to follow its attorney's advice left Jenkins to personally finance his appeal, and is indicative of bad faith. An insurer cannot merely pay its policy limits into court and then abandon the insured. (See *Merritt* v. *Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 876 [110 Cal.Rptr. 511].)

■ In the instant case, the extent of INA's duty to defend is not clear from the insurance policy. The policy itself provides INA will pay "premiums on appeal bonds required . . . but the Company shall have no obligation to apply for or furnish any such bonds" in a suit against the insured defended by the company. The United States District Court for the Northern District of California dealt with a substantially identical insurance provision in *Cathay Mortuary (Wah Sang)* v. *United Pacific Ins., supra*, 582 F.Supp. 650, and, in a well-reasoned opinion, found it imposed a duty to appeal: "The duration and extent of the insurers' obligation to defend is not clear from the insurance policy. The policy provides that the insurers 'shall pay . . . all premiums on appeal bonds in any such defended suit, but without any obligation to apply for or furnish such bonds . . .' The effect of this provision is ambiguous. It does not appear to say that the insurers are required to pursue an appeal but it implies the possibility of an appeal. The insurers are required to furnish the *premium* for an appeal bond. Presumably, this situation might arise if either the insurers *or* the insureds wanted to pursue an appeal. In any event, the language in the policy is too uncertain for the Court to find that there is any explicit contractual duty to pursue post-trial remedies. The court does conclude, however, that this language tends to favor a finding that an appeal would come within the purview of the afforded coverage." (*Id.* at p. 655, original italics.)

So, in the instant case, we conclude under the subject policy INA had a duty to appeal. As noted by the court in *Cathay Mortuary,* "the duty to appeal is not precluded by contract unless the contract very specifically exempts the insurer from the duty to appeal. *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 267; *Steven* v. *Fidelity and Casualty Co.* (1962) 58 Cal.2d 862, 878." (582 F.Supp. at pp. 655-656.)

The *Cathay Mortuary* court also noted there is a diversity of opinion as to whether an insurer is obligated to prosecute an appeal from an adverse judgment against its insured, and we have not found, nor have the parties cited, any California case directly on point. (See also 4 Couch on Insurance 2d (rev. ed.) § 51.38; Annot. (1960) 69 A.L.R. 2d 690.) One line of cases from other jurisdictions has held insurers have a duty to pursue appeals on behalf of their insureds. (See, e.g., *Kaste* v. *Hartford Accident and Indemnity Company* (1958) 5 App.Div.2d 203 [170 N.Y.S.2d 614, 616]; *Fidelity General Insurance Co.* v. *Aetna Ins. Co.* (1967) 27 App.Div.2d 932 [278 N.Y.S.2d 787]; *Palmer* v. *Pacific Indem. Co.* (1977) 74 Mich.App. 259 [254 N.W.2d 52, 55]; *Reichert* v. *Continental Insurance Company* (La.App. 1974) 290 So.2d 730, 734; *Petrol Industries* v. *Gearhart-Owen Industries* (La.App. 1972) 424 So.2d 1059.) A second, but related group of cases, has found a duty only if reasonable grounds exist for an appeal. (See, e.g., *Chrestman* v. *United States Fidelity & Guarantee Co.* (5th Cir. 1975) 511 F.2d 129; *Guarantee Abstract and Title Co.* v. *Interstate Fire* (1980) 228 Kan. 532 [618 P.2d 1195, 1199].)

We agree with the district court's opinion in *Cathay Mortuary* "that there is a general consensus that an insurer is obliged to pursue an appeal on behalf of its insured where there are reasonable grounds for appeal." (582 F.Supp. at p. 657.) In the instant case, INA's own counsel recommended an appeal which was ultimately pursued by Jenkins at his own expense, resulting in a reversal of the indemnity judgment.

Moreover, based on the evidence the jury could have concluded that INA never evaluated or considered the propriety or legal basis for an appeal of either of the judgments. As to the judgment in the homeowners' lawsuit, the evidence indicated INA's own attorney said an appeal was warranted, but that INA refused to appeal due to the cost of obtaining a trial transcript. There is no indication INA evaluated the legal basis for an appeal. Jenkins ultimately retained his own counsel and a complete reversal by this court of the indemnity judgment. Pursuant to its policy, INA had a duty to determine whether appeals should be taken on behalf of Jenkins.

The trial court did not instruct the jury INA had a duty to appeal under all circumstances. Rather, the jury was told that Jenkins had the burden of

proving INA refused to appeal where there were reasonable grounds for an appeal. The court's instruction was correct.[1]

IV-IX*

. . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Sonenshine, J., concurred.

**WALLIN, Acting P. J.**—I dissent. I agree with parts VII, VIII and most of part IX, but particularly disagree with parts III and VI of the majority opinion. I would reverse the judgment and order a new trial.

The majority concludes the jury was properly instructed on INA's duty to appeal the $716,000 verdict and judgment against Jenkins in the Brown case. While an insurer's duty to defend may include, in an appropriate case, a duty to appeal, the evidence presented here did not establish Jenkins suffered any harm from the failure to appeal the judgment. The verdict, although substantial, was actually less than anticipated and was considered a victory for the defense. No one testified a reversal, followed by a retrial and a more favorable verdict, was likely.

Almost every trial record includes some "reasonable grounds for appeal," but experience, statistics and common sense establish that relatively few appeals are successful. The appellate system could not exist as we know it if the law requires insurers, to avoid claims of bad faith, and presumably lawyers, to avoid claims of malpractice, to appeal whenever reasonable grounds can be found.

In this case an appeal would not have stayed the judgment creditors' right to execute on Jenkins's assets. No evidence suggests an appeal would have benefitted him in any way.

While substantial evidence does support the conclusion that INA unreasonably failed to disclose that its policies provided an additional $300,000 in coverage to Jenkins, the evidence does not support, as the majority holds in part VI, a claim that INA was guilty of a bad faith failure to settle the

---

[1] Our dissenting colleague misses the point. We do not hold INA breached the duty by failing to appeal. Rather, we hold there was evidence to support a finding by the jury that the duty was breached by INA's failure to consider in good faith whether to appeal.

* See footnote, *ante,* page 1481.

Brown case. Those plaintiffs never offered to settle for any less than $875,000, a sum much greater than the limits on INA's policies and substantially more than the verdict. By the time that offer was received INA had paid, at Jenkins's request, $225,000 of the $600,000 available under its policies to settle the Foell case. Although INA once estimated the Brown plaintiffs' claims were worth no more than $75,000 each, there is no evidence those claimants would have accepted that amount at any time. Even a policy limits offer would not have avoided any of the harm Jenkins contends he suffered.

I also disagree with the majority's initial citation of *Downey Savings & Loan Assn.* v. *Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072 [234 Cal.Rptr. 835] in part IX of its opinion. An insurer has a duty to its insured "to approach the claim with an eye to defeating it rather than pay it" (maj. opn., nonpub. portion) when it is *defending* its insured in a tort action. INA fulfilled that duty.

The emphasis during the trial on the issues discussed by the majority in parts III and VI in the testimony, instructions and argument of Jenkins's counsel substantially prejudiced INA. It should be granted a new trial.

Appellant's petition for review by the Supreme Court was denied August 20, 1990.