975 P.2d 1159

Sandra Jean DELMONTE,
Plaintiff–Appellant,

v.

STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, Defendant–Appellee, and Watanabe Ing & Kawashima, a Hawai'i corporation; and DOES 1–50, Defendants.

James Richard Delmonte,
Plaintiff–Appellant,

v.

State Farm Fire and Casualty Company, an Illinois corporation, Defendant–Appellee, and Watanabe Ing & Kawashima, a Hawai'i corporation; and Does 1–50, Defendants.

No. 21351

Supreme Court of Hawai'i.

Feb. 3, 1999.

Reconsideration Granted in Part
and Opinion Amended March 15, 1999.

42

Myles T. Yamamoto and Terrance M. Revere of Love Yamamoto & Motooka, on the briefs and on the motion, for plaintiffs-appellants.

Darolyn H. Lendio and Lisa M. Ginoza of McCorriston Miho Miller Mukai, on the briefs, for defendant-appellee.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by NAKAYAMA, J.

Plaintiffs-counterclaim defendants/appellants Sandra Delmonte and James Delmonte (collectively "Delmontes") appeal the judgment of the circuit court in favor of defendant-counterclaim plaintiff/appellee State Farm Fire and Casualty Company. The circuit court granted summary judgment for State Farm on all claims contained in both the Delmontes' complaint and State Farm's counterclaim. We affirm in part and vacate in part the judgment of the circuit court. The court erred in entering summary judgment as to the Delmontes' claim of bad faith. Moreover, the circuit court did not address the merits of the Delmontes' claim of unfair and deceptive trade practices. Therefore, we vacate these portions of the circuit court's judgment and remand for further proceedings on these claims. In all other respects, we affirm the circuit court's judgment.

## I. BACKGROUND

The following facts were determined by the circuit court in the underlying action. In 1986, the Delmontes purchased a house located on Lopaka Place in Kailua, Hawai'i (Lopaka residence) for $198,500. The Lopaka residence had a long history of problems with water intrusion due to faulty design. These problems were extensive, and water would enter the house at numerous points, at times accumulating two inches deep in the kitchen. The runoff from the deck drained into the wall cavity adjacent to the master bedroom. The ceiling had collapsed in parts and the house had historically sustained substantial damage from water intrusion.

The Delmontes resided in the Lopaka residence from approximately October 1, 1987 until September 1988, while their new personal residence was being renovated. In 1989, superficial repairs were done to the structure. While insufficient to remedy the causes of the water intrusion, there was no longer evidence visible to a layperson of the problem.

In August 1989, the Delmontes sold the Lopaka residence to Richard and Myung Kim Zandee Van Rilland (collectively Zandees) for $555,000. After Mrs. Zandee had signed a standard Deposit, Receipt, Offer and Acceptance (DROA) form, Mr. Delmonte unilaterally altered the form by inserting an "as is" clause into the agreement. The Zandees never agreed to the insertion of this clause into the agreement.

Prior to the closing, the Delmontes falsely represented to the Zandees that they had recently had the house fully treated for termites. Mr. Delmonte completed a seller's real property disclosure statement on August 24, 1989, wherein he only reported minor ceiling leaks in the past. The Zandees moved into the Lopaka residence in November 1989. After moving into the residence, the Zandees became aware of numerous problems with the structure.

On May 23, 1991, the Zandees, through their counsel, Charles Lotsof, filed a complaint in circuit court against the Delmontes. The complaint alleged that the Delmontes deliberately and knowingly misrepresented the condition of the Lopaka residence prior to the sale. The Zandees' complaint stated that the Zandees relied on the "intentional, negligent or other representations made by" the Delmontes. The complaint sought, in part, special damages for the cost of repair, general damages, including emotional distress damages, punitive damages, treble spe-

cial damages for fraudulent and deceptive trade practices, and attorneys' fees and costs.

In June 1991, the Delmontes, through their counsel, Gary Dubin, filed an answer to the Zandees' complaint. Dubin thereafter acted as defense counsel in the case. On November 6, 1992, the Delmontes tendered the complaint to State Farm and requested that State Farm provide a defense for them in the action.[1] Trial was scheduled to commence on December 14, 1992. On November 14, 1992, Jeffrey Portnoy wrote a letter to State Farm, stating in pertinent part that:

> We represent Mr. James Delmonte[2] and he has asked us to talk with you about State Farm's position that it will not permit Mr. Delmonte to participate in the selection of counsel to represent him in the [Zandee] litigation.
>
> It is my understanding that State Farm has unconditionally agreed to defend and indemnify Mr. Delmonte and his wife.... Mr. Delmonte would like us to be retained by State Farm and he has told me that you have advised him that that selection will be made only by your company.
>
> If I am mistaken in my belief that the acceptance of a defense and indemnity is "unconditional", then I am sure you understand that Mr. Delmonte does have the right to participate in the selection of counsel. On the other hand, if the defense and indemnity is not conditional in any respect, then it may well be that you have the right to select counsel.

On November 19, 1992, State Farm responded to Portnoy, stating that "enclosed [is] the portion of our policy which addresses the defense attorney provision. It states we will provide a defense at our expense by counsel of our choice."[3]

On December 11, 1992, the Zandees filed a motion to amend their complaint to delete emotional distress claims. Prior to filing this motion, the Zandees communicated directly with representatives of State Farm regarding State Farm's coverage and its duty to defend. A subsequent letter from Darolyn Lendio and Henry Klingeman, counsel to State Farm independent of this action, to State Farm opined that:

> Based on a review of correspondence in the file, it appears that counsel for the Zandee Van Rillands communicated with you regarding the company's coverage obligations, and then moved to withdraw all potentially covered claims, thereby extinguishing your insured's right to a defense at company expense and potentially exposing your insured's personal assets in the event of any judgment. Needless to say, your insured would view any effort on the part of the company to cooperate with plaintiffs' counsel in withdrawing the covered claims as a move to advance the company's interests at the expense of its insured. Accordingly, any such communication between you and plaintiffs' counsel creates a significant risk of a later action for extra-contractual damages if judgment is entered against your insured.

On or about December 12, 1992, State Farm retained the law firm of Watanabe, Ing & Kawashima (Watanabe) to represent the Delmontes. On December 16, 1992, John Komeiji, a partner with Watanabe, made an appearance as co-counsel with Mr. Dubin. As of this date, the trial had been continued and was scheduled to commence on January 11, 1993. On December 18, 1992, Komeiji sent Mr. Delmonte a letter stating, in pertinent part, that:

> Enclosed herein please find a draft of our memorandum in opposition to Zandee Van

---

1. The Delmontes were named insureds under five State Farm homeowners insurance policies at various times before and after the sale of the Lopaka residence. The Delmontes claimed potential coverage under all five policies for claims asserted in the Zandees' complaint.

2. Mr. Dubin was counsel of record at this time in the circuit court. Neither Portnoy nor his firm made an appearance as counsel for the Delmontes at any point in the proceedings. The record on appeal does not contain any informa-

tion as to the extent of the alleged representation by Portnoy.

3. The State Farm policies issued to the Delmontes contain a provision that "[i]f a claim is made or a suit brought against an insured for damages because of bodily injury or property damage to which this coverage applies, ... we will ... provide a defense at our expense by counsel of our choice."

Rilland's motion for leave to amend complaint.... As we discussed, the primary motivation, as expressed by Mr. Charles Lotsof[, counsel for the Zandee's], was to attempt to mold his Complaint to have coverage denied. Although we discussed the potential "downside" of having the emotional distress claim remain, *you have directed us to oppose the [Zandees'] attempt to delete their emotional distress claims.*

(Emphasis added.) The circuit court denied the Zandees' motion to amend their complaint on January 25, 1993.

On January 8, 1993, State Farm sent the Delmontes a letter that informed them that Watanabe had undertaken the defense and that "[a]s a duly authorized representative of your insurance carrier, this lawyer, under the terms of your policy, is entitled to your complete cooperation throughout the handling of this litigation[.]" Furthermore, the Delmontes were informed that:

We wish to call your attention to the fact that we specifically reserve our right to deny coverage to you (and anyone claiming coverage under the policy) for the following reasons:

It is questionable whether this is loss involves [sic] an "occurrence" as defined in your policy. It is also questionable whether bodily injury or property damage is involved as defined.

. . .

For these reasons and for other good and valid reasons known and unknown, the defense of this action by our attorney in your behalf is not to be considered a waiver of such policy defense or of any policy defense which may be involved in this case. If we do not hear from you to the contrary, we will assume that it is acceptable for us to continue handling the case on these terms.

We call your attention to the fact that a portion of the amount claimed against you in this suit is for punitive damages and treble damages, protection for which may

not be afforded by this policy, and for which there may be a personal liability upon your part. In view of this possible personal liability, it will be agreeable with this Company for you, if you so elect, to procure an attorney of your own choosing, at your own expense, to represent you personally and appear in this matter, in addition to the attorney we have selected and will compensate.

The record on appeal is devoid of any evidence regarding Komeiji's communications with the Delmontes as to their acceptance of his representation. It appears that the Delmontes were not informed of a right to reject the appointment of Komeiji as counsel.[4]

On January 8, 1993, Watanabe sent a letter to State Farm summarizing the investigation to date. The letter stated in pertinent part that:

Based upon the facts and investigation to date, we have informed the Delmontes that it is our opinion that liability will be found against them. We also have informed them there is also the strong possibility that there may be a finding by the judge of a fraud claim and possibly punitive damages.

The Delmontes are considering whether to enter into settlement discussions with the [Zandees]. However, prior to doing so, they would like to determine whether State Farm is willing to participate in contributing towards a settlement.

The Zandees expressed a willingness to settle the case for $118,345. Mr. Delmonte informed Komeiji that he was willing to contribute two-thirds of this amount to settle this case, if State Farm would contribute the additional one-third. On January 14, 1993, Komeiji informed Mr. Delmonte that "I was informed that State Farm is not willing to contribute anything towards settlement of this case."

On April 19, 1993, Darolyn Lendio and Henry Klingeman sent a letter to State Farm, opining that State Farm was not re-

---

4. Recently, in *Finley v. The Home Insurance Company*, 90 Hawai'i 25, 975 P.2d 1145 (1998), we recognized that the Hawai'i Rules of Professional Conduct (HRPC) mandates that the insured has "the right to refuse an insurer's tender of a defense under a reservation of rights[.]" 90

quired to provide a defense under the facts of the Zandees' complaint. This letter stated that "we strongly recommend that State Farm *continue* the defense being provided the Delmontes and *immediately* file an action for declaratory relief." (Emphases in original).[5]

On May 21, 1993, Mr. Delmonte sent Komeiji a letter requesting certain things to be done, both to prepare him for his deposition and to use in the defense of the case. In part, Mr. Delmonte requested that "I would like to have a write up on what you believe your trial strategy will be ... specifying the key issues and I would like you to provide trial memos on each such issue two weeks before the trial so that I can review said issue[.]"' On May 21, 1993, Komeiji sent Mr. Delmonte a letter stating, in pertinent part, that:

> In terms of your demands for work to be done, we have discussed the matter with State Farm. They have informed me that pursuant to the policy, they will direct the defense of the matter. Having reviewed your letter, they indicate that they have not authorized or directed our office to conduct the work that you are demanding.

The case proceeded to trial. A bench trial was conducted in the circuit court between June 28 and July 30, 1993. The Delmontes were represented at trial by Dubin and Komeiji. After trial, the circuit court entered findings of fact and conclusions of law on September 17, 1993, in which the court determined that the Delmontes had engaged in intentional fraud against the Zandees. The circuit court concluded that "[t]he evidence established clearly and convincingly that the Delmontes deliberately, intentionally and knowingly materially misrepresented the condition of the subject property to [the Zandees]." On December 14, 1993, the circuit court entered judgment in favor of the Zandees and against Mr. and Mrs. Delmonte, jointly and severally, in the amount of $118,-345 in special damages, $40,000 in general damages for emotional distress, $500,000 in punitive damages, and additional amounts for

pre-judgment interest and attorneys' fees. The total judgment entered against the Delmontes totaled $691,514.88.

On October 29, 1993, State Farm received a letter from Darolyn Lendio, opining as to its obligations subsequent to the entry of findings and conclusions by the circuit court. This letter stated, in pertinent part, that "State Farm is obligated to take an appeal only if 'reasonable grounds' exist for an appeal. State Farm should seek a written opinion from defense counsel as to the merits of an appeal and rely upon that opinion in deciding whether to continue with the defense of the Delmontes." This letter did not advise State Farm that it could withdraw the defense immediately based upon the circuit court's findings and conclusions. On November 2, 1993, State Farm sent a letter to Watanabe requesting that counsel "prepare an opinion letter covering the merits of [an appeal] and your recommendation whether or not one should be filed and pursued. *When you prepare the letter, please do not conduct any research* and you need not detail every reason for or against your recommendation" (emphasis added).

On November 9, 1993, Dubin sent a letter to Komeiji detailing his opinion as to potentially successful grounds for an appeal. On November 16, 1993, Komeiji responded to each of Dubin's alleged grounds for an appeal. Komeiji's written response stated that "it is our opinion that the issues you raised in your letter will not constitute grounds for a successful appeal." On December 21, 1993, Dubin sent a letter to State Farm outlining potential grounds for an appeal and requesting that State Farm undertake an appeal and provide a bond against the judgment pending the outcome of the appeal.

On January 5, 1994, Watanabe filed a notice of appeal on behalf of the Delmontes. On January 31, 1994, State Farm sent a letter to the Delmontes informing them that they would no longer provide an attorney for them and that they would not pursue the appeal on the Delmontes' behalf. This letter stated that:

Hawai'i at 31, 975 P.2d at 1151 (citing HRPC Rule 1.8(f)).

**5.** The record on appeal indicates that no declaratory judgment action was filed by State Farm during the pendency of the underlying case.

At our direction, the law firm of Watanabe, Ing and Kawashima has been defending you in these actions and have filed a Notice of Appeal on your behalf. These attorneys have advised, however, that they 'do not see a successful basis for an appeal' on your behalf. In their opinion, the [circuit court judgment] will stand. This means that it is unlikely the Findings of Fact and Conclusions of Law and judgments against you will change so as to qualify you for coverage under any of your policies. Under these circumstances, we must respectfully decline to continue to defend you in these lawsuits or to indemnify you for the judgment filed against you.

Watanabe subsequently withdrew as counsel for the Delmontes.

The Delmontes assert that they were unable to afford to pay for a required bond in order to stay execution of the judgment pending appeal. Therefore, in order to prevent the attachment and foreclosure of their property by the Zandees, the Delmontes entered into a settlement agreement on September 6, 1994. Pursuant to this agreement, the Delmontes paid $764,500 plus interest to the Zandees in exchange for a cessation of all legal actions between the parties. The appeal, docketed as No. 17885, was dismissed for lack of appellate jurisdiction on February 22, 1995.

On July 1, 1996, Mr. Delmonte and Mrs. Delmonte individually filed nearly identical complaints against State Farm and Watanabe. These are the actions from which consolidated appeals are now taken.[6] In their complaints, the Delmontes alleged, *inter alia*, that: (1) State Farm breached the insurance contract contained in their homeowners policies; (2) State Farm breached its duty of good faith and fair dealing; (3) State Farm was liable for indemnification of the judgment; (4) State Farm had a duty to provide the Delmontes with counsel of their choosing in addition to Watanabe and/or provide both Mr. and Mrs. Delmonte with different counsel; (5) State Farm was estopped from denying coverage because of its actions; (6) Watanabe's representation was tainted by a conflict of interest between State Farm and

the Delmontes; and (7) Watanabe therefore breached its fiduciary attorney-client duties.

On August 22, 1996, State Farm filed an answer and counterclaim. In its counterclaim, State Farm sought a declaratory judgment that it had no obligation to defend and/or indemnify the Delmontes for any claim in the underlying action, and had no liability for any claims arising out of the underlying action. On July 7, 1997, State Farm filed a motion for partial summary judgment on the Delmontes' claims for breach of contract, duty to defend, and duty to provide counsel of the Delmontes' choosing or different counsel for both Mr. and Mrs. Delmonte. This summary judgment motion also sought judgment on all claims contained in State Farm's counterclaim regarding its duty to defend the underlying action. On August 13, 1997, the Delmontes filed cross motions for summary judgment on the issue of estoppel. On October 30, 1997, State Farm filed a motion for partial summary judgment on the issue of estoppel. On November 3, 1997, the circuit court held a hearing on all three of the motions for partial summary judgment. The court granted both of State Farm's motions for partial summary judgment and denied the Delmontes' cross-motions for summary judgment.

The circuit court, relying on *Commerce & Industry Insurance Company v. Bank of Hawai'i*, 73 Haw. 322, 832 P.2d 733, *reconsideration denied* 73 Haw. 625, 834 P.2d 1315 (1992), determined that the findings of fact and conclusions of law in the underlying action constituted a "final judgment" as to the insurer's liability and that State Farm did not have a duty to prosecute an appeal from that decision because none of the findings constituted covered damages. The circuit court also ruled that State Farm was not estopped from denying coverage, distinguishing the holding of *AIG Hawai'i Insurance Company v. Smith*, 78 Hawai'i 174, 891 P.2d 261, *reconsideration denied*, 78 Hawai'i 421, 895 P.2d 172 (1995). Moreover, the court ruled that there was no duty to appoint separate counsel for the Delmontes, stating that:

**6.** These cases were consolidated by the circuit court by minute order on July 31, 1997.

[A]s a matter of law, there was no such duty.... The policies held by the Delmontes explicitly state ... that "if a claim is made or a suit is brought against an insured because of bodily injury or property damages to which this coverage applies, caused by an occurrence, we will: ... (2) provide a defense at our expense by counsel of our choice." While this provision may or may not result in a financial conflict of interest for [Watanabe] and set up State Farm as the fox guarding the henhouse, this was the policy signed by the Delmontes. The terms of the contract the Delmontes accepted clearly did not give them a right to counsel of their choice paid for by State Farm.

However, [the HRPC] sets forth an attorney's duty of loyalty and comment 10 to the rule explicitly addresses the situation where an insurer pays for the defense of its insured. HRPC directs that an attorney shall not allow a third party to affect or control his loyalty and representation of his client, even when that third party is paying for the attorneys' representation.... Thus, the Delmontes may have a remedy remaining in that any misconduct or disloyalty by [Watanabe] in conducting the Delmontes' defense is part of the malpractice claim against [Watanabe].

On February 3, 1998, the circuit court entered a final judgment pursuant to Rule 54(b) of the Hawai'i Rules of Civil Procedure (HRCP).[7] In this judgment, the circuit court decreed that

judgment is hereby entered in favor of [State Farm] and against [the Delmontes] as to all claims asserted in [the Delmontes'] respective complaints and as to all claims asserted in State Farm's counterclaims, with the only exceptions to the complete adjudication of all claims as to State Farm being: 1) the costs awarded in the underlying action; and 2) the respective rights of each party hereto to pursue claims for attorneys' fees and costs related to this action.

...

[The Delmontes'] claims against Defendant Watanabe, Ing, Kawashima remain before the circuit court. Pending [the Delmontes'] appeal of the claims adjudicated by way of this judgment, all proceedings before the circuit court are stayed[.]

(footnotes omitted).

The Delmontes thereafter filed this interlocutory appeal of the circuit court's judgment. On appeal, the Delmontes assert that: (1) State Farm was required to file a bond and prosecute an appeal in the underlying action; (2) State Farm should be estopped from denying coverage on the judgment because of its actions in the defense of the underlying case; (3) State Farm had a duty to appoint counsel chosen by the Delmontes in addition to Watanabe and/or pay for separate counsel for Mr. and Mrs. Delmonte individually; (4) the circuit court erred by granting summary judgment on issues not prayed for in the motions for partial summary judgment, specifically the Delmontes' claims of bad faith, breach of fiduciary duty, breach of duty to pay bonds as part of defense, unfair and deceptive acts and practices, and punitive damages.

## II. DISCUSSION

### A. State Farm's duty to prosecute an appeal from the circuit court's ruling in the underlying action

State Farm claims that its duty to defend the Delmontes' case terminated upon the circuit court's entry of findings and conclusions, which constituted a judicial determination that the Delmontes' acts were not within the scope of insurance coverage. The Delmontes claim that State Farm's duty to defend included a duty both to appeal the circuit court's decision in the underlying action and to post a bond covering the judgment during the pendency of the appeal.

The question whether the duty to defend includes a duty to appeal has not heretofore been directly addressed by the Hawai'i ap-

7. HRCP Rule 54(b) provides that:
When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties ... upon an express direction for the entry of judgment.

pellate courts. It is necessary to expand on our discussion in *Commerce & Industry, supra,* relied upon by the circuit court, in order to explain under what circumstances an insurer's duty to defend terminates subsequent to a circuit court's determination that the insured is liable, but that the insured's liability is outside of the coverage of any insurance policy.

In *Commerce & Industry,* a complaint was filed against Bank of Hawai'i, the insured, that alleged covered and non-covered claims. The circuit court granted summary judgment in favor of the insured on the potential covered claims. However, this judgment was not certified as final pursuant to HRCP Rule 54(b). Commerce & Industry Insurance Company, the insurer, thereafter filed a declaratory judgment action seeking a declaration that its duty to defend ceased upon entry of summary judgment on the potentially covered claims. The circuit court concluded that the insurer's duty to defend continued until the termination of the litigation. On appeal, we affirmed the circuit court's ruling.

In *Commerce & Industry,* we began our analysis with the well-established rule that "the obligation to defend under [the] policy ... is broader than the duty to pay claims and arises wherever there is the mere potential for coverage." 73 Haw. at 326, 832 P.2d at 735 (citations omitted). HRCP Rule 54(b) provides that "[i]n the absence of [certification] any order ... which adjudicates fewer than all the claims ... shall not terminate the action ... and the order ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Therefore, we held that

> HRCP Rule 54(b) makes absolutely clear the tentative nature of a dismissal of a claim prior to issuance of a judgment as to all claims or parties.

> An insurer has a duty to proceed in defense of a suit to the point of establishing that liability upon which the plaintiff is relying is in fact not covered by the policy, and not merely that it might not be. *The duty to defend continues until the potential for liability is finally resolved,* which

in this case would require [Commerce & Industry] to remain obligated to defend until either HRCP Rule 54(b) certification was granted and the appeal period had expired or a final judgment had disposed of the entire case.

*Id.* at 329, 832 P.2d at 737.

The issue presented by the instant case, which was not before us in *Commerce & Industry,* is whether the potential for liability is "finally resolved" upon entry of judgment by the circuit court, or whether the insurer's duty to defend requires the insurer to pay for the costs of an appeal of the decision. After surveying decisions from other jurisdictions, it appears that the general rule is that

> the insurer must provide ... a meaningful defense at the trial level and owes a duty to appeal in all instances where it appears the substantial interests of the insured may be served. The insurer must give weight to the opinions of attorneys employed to defend the case for the insured as well as to those of the attorneys employed by the insured.

7C Appleman, Insurance Law and Practice § 4688 (1979) (footnotes omitted). The insurer has a duty to appeal only if reasonable grounds for an appeal exist. *See Cathay Mortuary v. United Pacific Ins. Co.,* 582 F.Supp. 650 (N.D.Cal.1984); *Truck Ins. Exchange v. Century Indem.,* 76 Wash.App. 527, 887 P.2d 455 (1995); *Illinois Founders Ins. Co. v. Guidish,* 248 Ill.App.3d 116, 187 Ill.Dec. 845, 618 N.E.2d 436 (1993); *Jenkins v. Ins. Co. of North America,* 220 Cal.App.3d 1481, 272 Cal.Rptr. 7 (1990); *Reichert v. Continental Ins. Co.,* 290 So.2d 730 (La.App. 1974). *Cf. Palmer v. Pacific Indemnity Co.,* 74 Mich.App. 259, 254 N.W.2d 52 (1977) (holding that the insurance company must always appeal upon request by the insured).

In the underlying action in *Jenkins,* the insurer defended under a reservation of rights based upon the fact that the alleged damages exceeded the policy limits. Upon entry of a verdict against the insured in excess of the policy limits, the insurer was informed by its counsel that there were grounds for appeal. Instead of prosecuting an appeal, the insurer deposited the policy

limits with the court and withdrew its defense. In affirming a judgment against the insurer for bad faith, the court held that:

An insurer's duty to defend exists independently of and is much broader than the duty to indemnify. It is a duty which continues until a judgment has been entered and has become final.... We conclude this duty to defend may include the duty to appeal where reasonable grounds for an appeal exist.... As to the indemnity judgment against Jenkins, [insurer's] own counsel believed the ruling to be in error and subject to appeal. [insurer's] refusal to follow its attorneys' advice left Jenkins to personally finance his appeal, and is indicative of bad faith.... There is no indication [insurer] evaluated the legal basis for an appeal.

*Id.* at 11–12, 220 Cal.App.3d 1481 (citations omitted).

■ We hold, as a general proposition, that the insurer's duty to defend includes a duty to appeal where reasonable grounds for an appeal exist. State Farm's policies in the instant case contain broad language, informing the insured that it will "provide a defense" to the insured. "[T]he duty to appeal is not precluded by contract unless the contract very specifically exempts the insurer from the duty to appeal." *Cathay Mortuary,* 582 F.Supp. at 655–56 (citations omitted). Because State Farm's contract did not specifically exclude the duty to defend on appeal, State Farm was obligated to pursue an appeal if reasonable grounds existed.

■ Watanabe presented State Farm with an opinion letter stating that there were no reasonable grounds for an appeal. Dubin, independent counsel hired by the Delmontes, wrote to both Watanabe and State Farm outlining what he perceived as reasonable grounds for appeal. State Farm was required to consider both opinions, utilizing its own counsel if necessary. We note also that Watanabe's opinion letter was drafted after receiving specific instructions from State Farm not to conduct any research. While Watanabe was under an ethical duty to engage in competent representation of the Delmontes, State Farm's apparent reluctance to underwrite necessary expenses put the law

firm in a difficult position. Under most circumstances, State Farm's direction to Watanabe *not* to conduct any research would expose it to potential liability for bad faith. However, for the reasons that follow, in this case State Farm did not breach its duty to defend by not prosecuting an appeal.

■ The circuit court's judgment herein granted summary judgment on State Farm's counterclaim for declaratory relief that it did not have a duty to defend the Delmontes in the underlying action. This counterclaim sought "a binding declaration by the Court that State Farm has no obligation under the Policies to defend and/or indemnify [the Delmontes] with respect to any claims asserted against the Delmontes in the underlying action." The judgment of the circuit court entered on February 3, 1998 entered judgment in favor of State Farm "as to all claims asserted in State Farm's Counterclaims." The Delmontes did not raise as a point of error on appeal the circuit court's judgment that State Farm did not have a duty to defend the underlying case. Therefore, this judgment is final. Because State Farm did not have a duty to defend the underlying action, it had no duty to appeal. *See Illinois Founders,* holding that:

In our view, the obligation of good faith and fair dealing requires the insurer to prosecute an appeal in circumstances where reasonable grounds are present. We therefore conclude that, when an insurance contract provides a general duty to defend, the question of whether the insurer is obligated to prosecute an appeal from a judgment adverse to an insured must be resolved in the context of the duty of good faith and fair dealing owed by the insurer to its insured.

We need not reach the issue of whether such circumstances were present in this case. *If [insurer] owed no duty to defend [insured] in the first instance, it clearly had no duty to appeal a judgment against him.*

187 Ill.Dec. 845, 618 N.E.2d at 441 (citation omitted)(emphasis added).

■ We hold that, although State Farm may have had a duty to appeal the circuit

court's decision, because the final judgment entered in the instant case declared that State Farm did not have a duty to defend the underlying action, and no error was alleged by the Delmontes regarding this conclusion, any cause of action for breach of the duty to appeal is foreclosed. Therefore, the circuit court did not err in ruling that State Farm had no duty to appeal the judgment of the circuit court or to pay the premium for a bond for the appeal.

### B. State Farm is not estopped from denying coverage under the facts of this case.

The Delmontes argue that, pursuant to our decision in *AIG Hawai'i Insurance Company v. Smith, supra,* State Farm should be estopped from denying coverage because of its actions in conducting their defense. We disagree. *Smith* is factually distinguishable from the instant case and, under the circumstances herein, State Farm is not estopped from denying coverage for those portions of the circuit court's judgment which fall outside the scope of the policies.

In *Smith,* we recognized that there are certain circumstances under which the insurer's conduct of a defense of its insured is performed in such a manner as to create serious prejudice to the insured. Therefore, under these circumstances, the insurer is equitably estopped from denying indemnification for the judgment, despite the fact that the ultimate judgment is based on grounds outside the scope of coverage. "[T]he party invoking equitable estoppel must show that 'he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, *and* that such reliance was reasonable.' Such requirement, however, may be dispensed with in order to prevent manifest injustice." *Smith,* 78 Hawai'i at 179, 891 P.2d at 266 (emphasis in original) (citations omitted).

The Delmontes claim that State Farm's conduct in undertaking their defense prejudiced them to such an extent that it would be manifestly unjust to allow State Farm to now deny indemnification because of the outcome of the underlying action. Specifically, the Delmontes point to State Farm's: (1) two-month delay between assuming their defense and issuing a reservation of rights letter; (2) failure to appeal; (3) control of the defense to their detriment; (4) refusal to comply with Mr. Delmonte's requests for specific assistance; (5) utilization of confidential information to deny coverage; (6) refusal to contribute to settlement; and (7) disregard for Mrs. Delmonte's independent interests.

In *Smith,* the insured, Eric Castillo, tendered his defense to the insurer, AIG Hawai'i Insurance Co., after an automobile accident. A complaint was filed naming Castillo as a defendant on August 16, 1988. After being given notice of the complaint, AIG sent Castillo a letter disclaiming coverage for punitive damages and for compensatory damages over the policy limits. AIG did not issue a reservation of rights as to compensatory damages within policy limits. AIG thereafter paid for counsel who represented Castillo. On January 26, 1989, Castillo's deposition was taken. Then, in March 1989, based on information obtained through Castillo's deposition, AIG withdrew its defense.

In *Smith,* we began our analysis with the proposition that

> the insurer's unconditional defense of an action brought against its insured constitutes waiver of the terms of the policy and an estoppel of the insurer to assert such grounds. An insurance company, however, may initially assume the unconditional defense of an insured while it performs its own reasonable investigation to determine whether coverage exists.

78 Hawai'i at 177, 891 P.2d at 264 (citations omitted). AIG did not inform Castillo that it was reserving its rights to deny coverage for claims outside of the policy. Instead, it sent a letter disclaiming coverage for punitive damages and for compensatory damages over the policy limits only. This letter "affirmatively indicat[ed] to Castillo that, at least by clear implication, [AIG] would defend him and provide coverage for compensatory damages *within* the limits of the policy." *Id.* at 178, 891 P.2d at 265 (emphasis in original).

In *Smith,* Castillo was prejudiced by AIG's failure to issue a reservation of rights.

Rather than obtain a reservation of rights or non-waiver of rights, AIG: (1) chose instead to assume unconditional control over Castillo's defense; (2) reaffirmed its intention to provide coverage for compensatory damages within the policy limits; and (3) allowed Castillo's deposition to be taken, potentially exposing him to criminal liability, without the benefit of independent counsel. Moreover, the information obtained by AIG's retained counsel during the discovery process, including information learned from Castillo's deposition, was presumably relayed to AIG and served as the basis for AIG's denying coverage and withdrawing Castillo's defense. AIG's actions effectively deprived Castillo of his right to: (1) obtain private counsel; (2) control his defense ...; (3) explore possible settlement negotiations; and (4) control the manner and handling the lawsuit. AIG's actions further created an apparent conflict of interest due to the insurance company's attorney performing a dual role, that is, maintaining exclusive control of the defense of the claims against the insured while gathering information that could simultaneously be used by the insurer to deny coverage.

*Id.* at 179–180, 891 P.2d at 266–267. Therefore, we held that AIG was equitably estopped from denying coverage to Castillo because of its actions in conducting his defense.

■ The considerations present in *Smith* are not present in the instant case. While there was a two-month span between State Farm's assumption of the Delmontes' defense and the issuance of a reservation of rights, this was not unreasonable. We specifically recognized in *Smith* that the insurer may initially assume an unconditional defense while it conducts its own reasonable investigation as to coverage. At the time the Delmontes tendered the defense of the case to State Farm, the litigation had been ongoing from May 1991 until November 1992. A two-month delay therefore was not unreasonable. Moreover, the Delmontes were represented by independent counsel and exercised some control over the defense, as exemplified by Watanabe's acquiescence in the Delmontes' request to oppose the Zandees' motion to

withdraw their emotional distress claim. Clearly, the opposition to the motion was not in State Farm's best interest; however, Watanabe was appropriately looking after the best interests of its client, the Delmontes. The situation in *Smith*, where the insurer exercised total control over the defense for a lengthy period of time, was not present in this case.

State Farm's actions did not dissuade the Delmontes from obtaining private counsel, as did the actions of the insurer in *Smith*. Also factually distinguishable is that State Farm neither impeded the Delmontes from engaging in settlement negotiations with the Zandees nor relied on information obtained as a result of confidential communications to withdraw its defense. Moreover, State Farm timely issued a reservation of rights letter. State Farm discontinued paying for the services of a defense attorney when a decision by the circuit court, a neutral factfinder, was issued regarding the basis for the Delmontes' liability. For the foregoing reasons, the Delmontes' reliance on *Smith* to assert equitable estoppel is misplaced.

The factors asserted by the Delmontes as the basis for applying equitable estoppel do not warrant this remedy under the facts of this case. We are not persuaded that it would be manifestly unjust to allow State Farm to deny coverage based upon the circuit court's findings of intentional fraud by the Delmontes.

■ The Delmontes' claims that State Farm controlled the defense of their case to their detriment and refused to comply with Mr. Delmonte's requests for specific assistance also do not warrant the remedy of equitable estoppel. Watanabe was retained by State Farm to defend the Delmontes. Although State Farm paid for the representation, Watanabe was subject to a professional duty to attend to the interests of its clients, the Delmontes, and not to allow State Farm's financial underwriting of the expenses to infringe upon its duty of competent representation. The circuit court correctly recognized this, stating in the order denying the Delmontes' motions for partial summary judgment on estoppel that

HRPC 1.7 sets forth an attorneys' duty of loyalty and comment 10 to the rule explicitly addresses the situation where an insurer pays for the defense of its insured.[8] [The] HRPC directs that an attorney shall not allow a third party to affect or control his loyalty and representation of his client, even when that third party is paying for the attorney's representation.... Thus, the Delmontes may have a remedy remaining in that any misconduct or disloyalty by [Watanabe] in conducting the Delmontes' defense is part of the malpractice claim against [Watanabe.]

Because this case comes to us as an interlocutory appeal, the claims against Watanabe are still extant. There is no circuit court ruling on the issue of whether Watanabe allowed the interests of State Farm to detrimentally affect its representation of the Delmontes, and we must therefore rely on the allegations in the Delmontes' complaint. We express no opinion on the merits of the Delmontes' claims against Watanabe.

■ The Delmontes claim that State Farm controlled the defense of their action to their detriment. For Watanabe to allow this would be a breach of its fiduciary duty to its clients. However, we affirm the circuit court's ruling that these allegations do not warrant the remedy of equitable estoppel. The same analysis applies to the Delmontes' claim that Mr. Delmonte's requests for specific assistance in preparing for his deposition and trial testimony were improperly denied. While these allegations implicate a potential claim for professional malpractice against Watanabe, or bad faith against State Farm, the availability of these potential remedies undercuts the application of the principle of equitable estoppel.

There is no support in the record for the Delmontes' contention that State Farm utilized confidential information as a basis for withdrawing coverage. State Farm's withdrawal was made pursuant to the circuit court's ruling that the Delmontes' acts were intentionally fraudulent and, therefore, outside of the scope of insurance coverage.

■ The Delmontes' contention that State Farm had a duty to pay for independent counsel for Mrs. Delmonte is addressed in the following section. The final factor raised by the Delmontes in support of their equitable estoppel argument is that State Farm's refusal to contribute to settlement was so egregious that, having refused to settle the case for a low figure, State Farm should be estopped from denying coverage due to the outcome of the circuit court trial. We disagree. The duty to defend is broader than the duty to indemnify. State Farm's assumption of the defense of the Delmontes does not require it to contribute to settlement. *See Cay Divers, Inc. v. Raven,* 812 F.2d 866, 871 (3d Cir.1987) ("[insurer's] refusal to consent to settlement in the face of a genuine concern over coverage does not constitute bad faith"). State Farm was required to evaluate the facts and allegations against the Delmontes. If State Farm had refused to pay for the settlement, and the ultimate judgment was on a basis covered by the insurance policy, then State Farm would have been required to indemnify its insureds.[9] However, this was not the case here.

For the foregoing reasons, we reject the Delmontes' claim that State Farm should be equitably estopped from denying coverage based on its handling of the defense.

**C. State Farm did not have a duty to pay either for additional counsel chosen by the Delmontes or for additional counsel for Mrs. Delmonte individually.**

The Delmontes argue that, in addition to appointing Watanabe, State Farm had an

---

**8.** Comment 10 to HRPC Rule 1.7 states that:

A lawyer may be paid from a source other than the client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty to the client. For example, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement, and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence.

**9.** Even if the ultimate judgment was in excess of the policy limits, the insurer may still be liable for the entire amount if its refusal to settle was unreasonable. *See Crisci v. Security Ins. Co.,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967).

obligation to pay for separate counsel of their choosing. Alternatively, the Delmontes argue that they should have been allowed to select the attorney to represent them in the underlying action, whose fees would have been paid for by State Farm. It is, however, unclear what relief the Delmontes are seeking at this stage of the proceedings for State Farm's actions. The Delmontes' complaint sought compensatory damages for the failure of State Farm to provide independent counsel of their choosing. On appeal, the Delmontes' opening brief asserts that the failure of State Farm to heed their request for appointed counsel warrants the remedy of estoppel to deny coverage. Their reply brief, however, asserts that "State Farm must pay ... reasonable fees" for the independent counsel hired by them in the defense of the underlying action.

The issue of whether an insurer, who tenders a defense under a reservation of rights, is additionally responsible for paying the fees of counsel separately retained by the insured was recently addressed at length by our recent opinion in *Finley v. The Home Insurance Company*, 90 Hawai'i 25, 975 P.2d 1145 (1998). We held therein that when (1) an insurer contracts for the right to select counsel to represent the insured, (2) the insurer issues a reservation of rights, and (3) the insured accepts the tender of the defense under the terms offered by the insurer, the insurer is not required to pay for additional counsel separately retained by the insured. Furthermore, we held that we would "refrain from interfering with the insurer's contractual right to select counsel." 90 Hawai'i at 31, 975 P.2d at 1151 (footnote omitted). In the instant case, while we hold that State Farm is not required to pay for the Delmontes' fees incurred in retaining additional counsel, we must address the fact that, unlike in *Finley*, the Delmontes attempted to reject Komeiji's representation but were informed that the insurance contract overrode their right to select counsel.

As we explained in *Finley*, a contractual provision that conflicts with an attorney's representation in accord with the Hawai'i Rules of Professional Conduct (HRPC) must yield to the requirements of professional ethics. 90 Hawai'i at 34, 975 P.2d at 1154.

> [T]he right to refuse an insurer's tender of a defense under a reservation of rights is mandated by the HRPC. *See* HRPC Rule 1.8(f), stating that "[a] lawyer shall not accept compensation for representing a client unless: (1) the client consents after consultation[.]" The requirement of client consent necessarily implies the right not to consent. Therefore, if the client does not desire the representation under the terms offered by the insurer, the insurer must either choose to defend unqualifiedly or allow the insured to conduct its own defense of the action.

*Id.* at 35, 975 P.2d at 1155 (brackets in original).

Therefore, State Farm's reliance on the contractual provision to mandate that the Delmontes accept Komeiji's representation was erroneous. However, had the Delmontes been allowed to reject Komeiji's appointment, they would have been personally responsible for the fees of counsel hired to represent them in the underlying action. Therefore, the Delmontes would not, in any event, have been entitled to reimbursement for Dubin's attorneys' fees. Any harm to the Delmontes because of the violation of their right to reject Komeiji's defense is remediable through resolution of their claims of bad faith and malpractice.[10] These claims must be determined by the circuit court upon a complete record regarding the claim against Watanabe for malpractice and State Farm's potential liability for bad faith.[11] If Watanabe's representation comported with the requirements of the HRPC and State Farm's actions did not compromise the representation of the Delmontes such that there was harm to the Delmontes' interests, then the apparent failure of State Farm and Komeiji to offer the Delmontes the option of rejecting the tender of the defense may not have re-

---

10. *See infra* section D, holding that the circuit court erred in granting summary judgment in State Farm's favor on the Delmontes' claim of bad faith.

11. For the reasons enumerated *supra* in section B, the availability of alternate remedies obviates the remedy of equitable estoppel.

sulted in any compensable injury.[12]   On the record presently before us, however, we are unable to resolve this issue.

■■■   The Delmontes additionally argue that State Farm was required to appoint separate counsel for Mr. and Mrs. Delmonte individually.   We recognized in *First Insurance Co. of Hawaii v. State of Hawaii*, 66 Haw. 413, 417, 665 P.2d 648, 652 (1983), that, when two insureds are sued in the same action but have a conflict of interest in the representation, then the insurer must provide separate counsel for each.   In this case, the circuit court concluded that there was no conflict of interest between Mr. and Mrs. Delmonte because:

> A reading of the Zandee's complaint and counterclaim makes it clear that the Delmontes were being accused as the joint owners of the property and as co-signatories of the Seller's disclosure form.   Thus the Delmontes' interests did coincide.   The Delmontes never made the claim that only one of them was responsible; they never pointed fingers at one another.   The Delmontes rose and fell on the same facts.   All the Delmontes ever said was that Sandra did not know as much as or was as involved as James.   This is a matter of degree of each spouses' responsibility under the same defense, not an entirely different defense for each spouse.

We agree with the circuit court's reasoning.   Mr. and Mrs. Delmonte failed to show that a conflict of interest existed that would have required separate counsel for each individually.

**D.   There is a genuine issue of material fact as to State Farm's potential liability for bad faith.**

■■■   The circuit court granted summary judgment against the Delmontes on all claims contained in their complaint.   The Delmontes' complaint contained an allegation of bad faith in State Farm's handling of the defense in the underlying action.   State Farm did not move for summary judgment on the bad faith claim, and the circuit court did not address this issue in either of the orders granting partial summary judgment.   On the record before us, there is potential liability based on the claim of bad faith that cannot be finally determined until the circuit court has ruled on the malpractice claim against Watanabe.   If Watanabe's conduct of the defense breached its duties toward its client, the Delmontes, then Watanabe may be liable for its breach.   In addition, if such a breach was causally induced by State Farm's actions, then State Farm may potentially be liable for a breach of its duty of good faith and fair dealing.[13]   Because the Delmontes have presented evidence that raises a genuine issue of material fact as to State Farm's liability under this theory, and because State

---

**12.**   This implicates the relationship between violation of an ethical rule and potential tort liability.  Violation of the HRPC does not, *per se*, equate to liability in tort.   "Even in cases of plain violation of a disciplinary rule, a potential plaintiff muse still negotiate the hurdles of standing, cognizable injury, proximate cause, duty and breach[.]" Geoffrey Hazard & William Hodes, A Handbook on the Model Rules of Professional Conduct § 1.1:201 (2d ed.   1997 Supp.).   While the exact relation between violation of a disciplinary rule and breach of the professional standard of care is not before us, the requirements of the HRPC are at least relevant to a determination of the duty owed by an attorney to his or her client.   "Given the potential consequences of their violation and the fundamental nature of their purpose, it would not be logical or reasonable to say that the Bar Rules, in general, do not play a role in shaping the 'care and skill' ordinarily exercised by attorneys practicing law[.]"   *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 265 Ga. 374, 453 S.E.2d 719, 721 (1995).   *See also* Note: The

Evidentiary Use of the Ethics Codes in Legal Malpractice:   Erasing a Double Standard, 109 Harv.   L.Rev.   1102, 1119 (1996) (opining that "[b]y creating the [rules of professional conduct], the legal profession's governing bodies have provided comprehensible, accessible, and enforceable rules of conduct for the nation's exploding population of lawyers.   The fact that these rules were designed specifically for application in the disciplinary context does not overcome the logic, feasibility, or functional value of extending their application—at least in part—to the malpractice context.")

**13.**   In *Best Place, Inc. v. Penn America Ins. Co.*, 82 Hawai'i 120, 132, 920 P.2d 334, 346 (1996), we held that "there is a legal duty, implied in a first- and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action."

Farm's motions for summary judgment did not pray for judgment on this claim, it was erroneous for the circuit court to enter judgment on it.

We held in *Finley* that

[A]n attorney who follows the . . . requirements of the HRPC must: (1) consult with the client as to the "means by which the objectives [of the representation] are to be pursued"; (2) not allow the insurer to interfere with the attorney's "independence of professional judgment or with the client-lawyer relationship"; and (3) not allow the insurer "to direct or regulate the lawyer's professional judgment in rendering legal services." *Only* if these requirements are met will the representation of an insured, paid for by an insurer with a conflicting interest in the outcome of the litigation, comport with the mandates of the HRPC.

90 Hawai'i at 33, 975 P.2d at 1153 (emphasis and some brackets in original).

We do not express any opinion as to the validity of the Delmontes' malpractice claim against Watanabe. That is still to be determined in later proceedings. However, the bad faith complaint against State Farm may not finally be resolved until the claims against Watanabe have been determined. There is conflicting evidence in the record as to whether Komeiji was allowed to exercise his professional judgment in handling the Delmontes' case.

The circuit court's determination that State Farm did not have a duty to defend the Delmontes does not foreclose the possibility of a cognizable bad faith claim. "An insurer may be liable for the improper conduct of the defense of its insured even though it is ultimately determined that the insurer had no duty to defend or indemnify under the terms of the policy." Insurance Bad Faith Litigation § 3.15[2] (Matthew Bender 1998). Thus, for example, if the insurer assumes the defense and, through mishandling of the defense, causes actual harm to the insured, a bad faith claim is cognizable despite a later declaration that the insurer did not have a duty to defend in the first instance. Having assumed the defense, the insurer is under a duty to undertake the defense in good faith until such time as there are clear grounds for withdrawal. In the event of a significant question regarding coverage, the insurer may seek a declaratory judgment. However, in the interim, the insurer must undertake the defense in good faith.

In *Finley*, we adopted an "enhanced" standard of good faith in a reservation of rights situation. On remand, the circuit court must apply this standard to the Delmontes' bad faith claim against State Farm.

[A]n insurance company must fulfill an enhanced obligation to its insured as part of its duty of good faith. Failure to satisfy this enhanced obligation may result in liability of the company[.]

This enhanced obligation is fulfilled by meeting specific criteria. First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the *insured* is the client. . . . Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

*Finley*, at 36–37, 975 P.2d at 1156–1157 (quoting *Tank v. State Farm Fire & Casualty Co.*, 105 Wash.2d 381, 715 P.2d 1133 (1986)) (emphasis in original).

In addition to State Farm's alleged interference with the representation, the Delmontes raise two additional bases for their bad faith claim against State Farm. First, the Delmontes claim that State Farm engaged in bad faith by refusing to contribute to settlement. For the reasons enumerated above, we reject this argument. State Farm did not have a duty to contribute to settlement. Second, the Delmontes point to State Farm's actions in contacting the Zandees in an attempt to mold the complaint to avoid triggering State Farm's duty to defend. We do not approve of this conduct by State Farm. As State Farm was informed by its own counsel, this overt act against the interests of its insured could be construed as bad faith.

However, in this particular case, the Delmontes apparently were not damaged by State Farm's actions. The circuit court denied the Zandees' motion to amend the complaint, and State Farm continued to defend the Delmontes until the resolution of the trial. A cognizable claim of tortious bad faith requires a showing of damage causally related to State Farm's actions.

For the foregoing reasons, we vacate the circuit court's grant of summary judgment in favor of State Farm on the Delmontes' bad faith claim.

**E. The circuit court did not rule on the Delmontes' claims for unfair and deceptive acts and practices and breach of fiduciary duty.**

■ The Delmontes' complaint contained, *inter alia,* claims of unfair and deceptive acts and practices and breach of fiduciary duty. Although State Farm's motions for partial summary judgment did not request summary judgment on these claims and the orders granting summary judgment did not address these claims, the final judgment entered by the circuit court pursuant to HRCP Rule 54(b) granted summary judgment in favor of State Farm on these claims. Because the Rule 54(b) judgment improperly granted summary judgment in State Farm's favor on these claims, we vacate this portion of the judgment.[14,15]

### III. CONCLUSION

For the foregoing reasons, we vacate the circuit court's grant of summary judgment in favor of State Farm on the Delmontes' claims of (1) bad faith (counts III and VII), (2) breach of fiduciary duty (count IV), and (3) unfair and deceptive trade practices (counts V and VI) and remand for further proceed-

ings. In all other respects, we affirm the judgment of the circuit court.

### MOTION FOR RECONSIDERATION

Upon consideration of Plaintiffs-appellants Sandra and James Delmonte's motion for reconsideration of the opinion filed on February 3, 1999, and the record herein,

IT IS HEREBY ORDERED that the motion is granted in part and denied in part. An order amending the opinion shall be filed concurrently with this order. The amendments address the meritorious arguments raised by the Delmontes in their motion for reconsideration.

■ In all other respects, the Delmontes' motion for reconsideration is denied. It must be emphasized that the Delmontes are not foreclosed from challenging the findings and conclusions of the circuit court in the underlying action on remand. This is implicit in our holding remanding the case for further proceedings on the Delmontes' claims that retained counsel in the underlying action improperly manipulated the outcome to their detriment. The doctrine of collateral estoppel does not prevent the relitigation of the findings of the circuit court because "collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Pele Defense Fund v. Paty,* 73 Haw. 578, 599–600, 837 P.2d 1247, 1261 (1992). The Delmontes' complaint in this action is based upon an allegation that Watanabe did not fairly represent their interests in the underlying case. Because relitigation is not barred by collateral estoppel, the Delmontes may present evidence regarding the underlying claim.

14. The Delmontes' complaint also contained a claim for "breach of the duty to pay the premium on bonds required in suits State Farm defends." Because we have held that State Farm did not have a duty to appeal, it did not have a duty to pay the premium for a bond for an appeal. Therefore, summary judgment on this claim was properly granted.

15. Although we reinstate the Delmontes' claim of breach of fiduciary duty (count IV), we emphasize that this does not resurrect any argument subsumed within this issue which was ruled upon by our opinion, *supra.* Therefore, the Delmontes may not, for example, relitigate the argument that State Farm had a duty to defend their case insofar as the circuit court's declaratory ruling on this issue was not challenged on appeal and is, therefore, final.

Moreover, insofar as the Delmontes' claims for bad faith, unfair and deceptive practices and breach of fiduciary duty all sought punitive damages as part of the requested relief, and these claims were reinstated by the opinion in this matter, the Delmontes' prayer for punitive damages is still pending with regard to these counts.